TROY LAW, PLLC
John Troy (JT 0481)
41-25 Kissena Boulevard, Suite 119
Flushing, NY 11355
Tel: (718) 762-1324
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

 ---------------------------------------------------------------- x

JIAN WU and
FEN BIAO CAI,
*on behalf of themselves and others similarly situated,*

                                                    Plaintiffs,

                                     v.

SUSHI NOMADO OF MANHATTAN, INC.
    d/b/a Nomado 33,
SUSHI PARA 33 CORPORATION
    d/b/a Nomado 33,
SUSHI PARA MANHATTAN, CORP.
    d/b/a Sushi Para
    d/b/a Sushi Para (14th Street)
    d/b/a Sushi Para (Third Avenue)
    d/b/a Sushi Para 88,
WEI LOONG CHAN a/k/a Wei Loon Chan,
WENWU CHEN,
ZHOU LIN,
SHENG R DONG, and
DING FENG ZHANG
    a/k/a Andy Zhang,

                                                    Defendants.

 ---------------------------------------------------------------- x

**Case No. 1:17-cv-04661-PGG-DCF**

**29 U.S.C. § 216(b) COLLECTIVE ACTION AND FED. R. CIV. P. 23 CLASS ACTION**

**FIRST AMENDED COMPLAINT, CONSOLIDATED**

Plaintiffs JIAN WU (hereinafter referred to as "Plaintiff WU") and FEN BIAO CAI (hereinafter referred to as "Plaintiff CAI") (hereinafter collectively "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their attorneys, Troy Law, PLLC, hereby bring this complaint against Defendants SUSHI NOMADO OF MANHATTAN, INC. d/b/a Nomado 33, SUSHI PARA 33 CORPORATION d/b/a Nomado 33, SUSHI PARA MANHATTAN, CORP. d/b/a Sushi Para d/b/a Sushi Para (14th Street) d/b/a Sushi Para (Third

Avenue) d/b/a Sushi Para 88, WEI LOONG CHAN a/k/a Wei Loon Chan, WENWU CHEN, ZHOU LIN, SHENG R DONG, and DING FENG ZHANG a/k/a Andy Zhang, (hereinafter referred to as "Defendants").

## INTRODUCTION

1.   This action is brought by Plaintiffs, on behalf of themselves as well as other similarly situated employees against Defendants for violations of the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201 *et seq.* and of the New York Labor Law ("NYLL") and implementing New York Codes, Rules, and Regulations ("NYCRR"), arising from Defendants' various willful and unlawful employment policies, patterns and/or practices.

2.   Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA, NYLL, and NYCRR by engaging in a pattern and practice of failing to pay their employees, including Plaintiffs, minimum wage for each hour worked, overtime for all hours worked in excess of forty (40) in each workweek, and spread-of-hours for all hours worked in excess of ten (10) in each workday.

3.   Defendants willfully failed to record all of the time that Plaintiffs and similarly situated employees work or worked, including time worked in excess of forty (40) hours per week and ten (10) hours per day.

4.   Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid wages, including unpaid minimum wages, (2) unpaid overtime, (3) liquidated damages; (4) prejudgment and post-judgment interest; and/or (5) attorneys' fees and costs.

5.   Plaintiffs further allege pursuant to the NYLL § 650 *et seq.* and 12 NYCRR § 146 that they are entitled to recover from the Defendants: (1) unpaid wages, including unpaid minimum wages,

(2) unpaid overtime, (3) unpaid spread-of-hours; (4) liquidated damages equal to one hundred percent (100%) of the sum of unpaid wages, unpaid overtime, and unpaid spread-of-hours under the New York Wage Theft Prevention Act 2009 N.Y. S.N. 8380, (5) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (6) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day (7) nine percent (9%) simple prejudgment interest as provided by the New York Civil Practice Law and Rules ("CPLR") N.Y.C.P.L.R. § 5004, (8) post-judgment interest, and (9) attorneys' fees and costs.

6.   Plaintiffs further allege that Defendants breached implied contract by failing to reimburse Plaintiffs for expenses paid for the purchase, repair, utilization and maintenance of delivery vehicles and the purchase, utilization and maintenance of other requisite tools of the trade.

## **JURISDICTION AND VENUE**

7.   This Court has original federal question jurisdiction over this controversy under 29 U.S.C. §216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a).

8.   Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

**PLAINTIFFS**

9.   Plaintiff JIAN WU was employed by Defendants at Nomado 33, located at 165 E 33rd Street, New York, NY 10016, as a deliveryman.

10. Plaintiff FEN BIAO CAI was employed by Defendants at Sushi Para (Third Avenue), located at 1461 Third Avenue, New York, NY 10028 and at Sushi Para (14th Street) located at 212 W 14th Street, New York, NY 10011 as a deliveryman.

**DEFENDANTS**

***Corporate Defendants***

11. Defendant SUSHI NOMADO OF MANHATTAN, INC. d/b/a Nomado 33 is a domestic business corporation organized under the laws of the State of New York with a principal address at 165 E 33rd Street, New York, NY 10016.

12. SUSHI NOMADO OF MANHATTAN, INC. d/b/a Nomado 33 is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000.00) per year.

13. SUSHI NOMADO OF MANHATTAN, INC. d/b/a Nomado 33 purchased and handled goods moved in interstate commerce.

14. Defendant SUSHI PARA 33 CORPORATION d/b/a Nomado 33 is a domestic business corporation organized under the laws of the State of New York with a principal address at 18 Delancey Street, Floor 2, New York, NY 10016.

15. SUSHI PARA 33 CORPORATION d/b/a Nomado 33 is a business engaged in interstate commerce that had gross sales in excess of five hundred thousand dollars ($500,000.00) per year.

16. SUSHI PARA 33 CORPORATION d/b/a Nomado 33 purchased and handled goods moved in interstate commerce.

17. Defendant SUSHI PARA MANHATTAN, CORP. d/b/a Sushi Para d/b/a Sushi Para (14th Street) d/b/a Sushi Para (Third Avenue) d/b/a Sushi Para 88 is a domestic business corporation organized under the laws of the State of New York with a principal address at 1461 Third Avenue, New York, NY 10028.

18. SUSHI PARA MANHATTAN, CORP. d/b/a Sushi Para d/b/a Sushi Para (14th Street) d/b/a Sushi Para (Third Avenue) d/b/a Sushi Para 88 is a business engaged in interstate commerce that had gross sales in excess of five hundred thousand dollars ($500,000.00) per year.

19. SUSHI PARA MANHATTAN, CORP. d/b/a Sushi Para d/b/a Sushi Para (14th Street) d/b/a Sushi Para (Third Avenue) d/b/a Sushi Para 88 purchased and handled goods moved in interstate commerce.

20. At all relevant times, the work performed by Plaintiffs was directly essential to the businesses operated by the Corporate Defendants.

*Individual Defendants*

21. The Individual Defendants are officers, directors, managers, and/or majority shareholders or owners of the Corporate Defendants and being among the ten largest corporate shareholders are individually responsible for unpaid wages under the New York Business Corporation Law ("NYBSC") § 630(a).

22. WEI LOONG CHAN a/k/a Wei Loon Chan (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employee rates and methods of payment, and (4) maintained employee records at SUSHI NOMADO OF MANHATTAN, INC. d/b/a Nomado 33, SUSHI PARA 33 CORPORATION d/b/a Nomado 33, SUSHI PARA MANHATTAN, CORP. d/b/a Sushi Para d/b/a Sushi Para (14th Street) d/b/a Sushi Para (Third Avenue) d/b/a Sushi Para 88.

23. WEI LOONG CHAN a/k/a Wei Loon Chan is an owner and officer of SUSHI NOMADO OF MANHATTAN, INC. d/b/a Nomado 33, SUSHI PARA 33 CORPORATION d/b/a Nomado 33, SUSHI PARA MANHATTAN, CORP. d/b/a Sushi Para d/b/a Sushi Para (14th Street) d/b/a Sushi Para (Third Avenue) d/b/a Sushi Para 88 and the New York Division of Alcoholic Beverage Control Principal for SUSHI NOMADO OF MANHATTAN, INC. d/b/a Nomado 33.

24. WEI LOONG CHAN a/k/a Wei Loon Chan acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d), and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL § 2, and regulations promulgated thereunder, and is jointly and severally liable with SUSHI NOMADO OF MANHATTAN, INC. d/b/a Nomado 33, SUSHI PARA 33 CORPORATION d/b/a Nomado 33, SUSHI PARA MANHATTAN, CORP. d/b/a Sushi Para d/b/a Sushi Para (14th Street) d/b/a Sushi Para (Third Avenue) d/b/a Sushi Para 88.

25. WENWU CHEN (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employee rates and methods of payment, and (4) maintained employee records at SUSHI NOMADO OF MANHATTAN, INC. d/b/a Nomado 33, SUSHI PARA 33 CORPORATION d/b/a Nomado 33, SUSHI PARA MANHATTAN, CORP. d/b/a Sushi Para d/b/a Sushi Para (14th Street) d/b/a Sushi Para (Third Avenue) d/b/a Sushi Para 88.

26. WENWU CHEN is an owner and officer of SUSHI NOMADO OF MANHATTAN, INC. d/b/a Nomado 33, SUSHI PARA 33 CORPORATION d/b/a Nomado 33, SUSHI PARA MANHATTAN, CORP. d/b/a Sushi Para d/b/a Sushi Para (14th Street) d/b/a Sushi Para (Third Avenue) d/b/a Sushi Para 88 and the person to whom the New York Department of State will mail process if accepted on behalf of SUSHI PARA 33 CORPORATION d/b/a Nomado 33.

27. WENWU CHEN acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d), and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL § 2, and regulations promulgated thereunder, and is jointly and severally liable with SUSHI NOMADO OF MANHATTAN, INC. d/b/a Nomado 33, SUSHI PARA 33 CORPORATION d/b/a Nomado 33, SUSHI PARA MANHATTAN, CORP. d/b/a Sushi Para d/b/a Sushi Para (14th Street) d/b/a Sushi Para (Third Avenue) d/b/a Sushi Para 88.

28. ZHOU LIN (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employee rates and methods of payment, and (4) maintained employee records at SUSHI NOMADO OF MANHATTAN, INC. d/b/a Nomado 33, SUSHI PARA 33 CORPORATION d/b/a Nomado 33, SUSHI PARA MANHATTAN, CORP. d/b/a Sushi Para d/b/a Sushi Para (14th Street) d/b/a Sushi Para (Third Avenue) d/b/a Sushi Para 88.

29. ZHOU LIN is an owner and officer of SUSHI NOMADO OF MANHATTAN, INC. d/b/a Nomado 33, SUSHI PARA 33 CORPORATION d/b/a Nomado 33, SUSHI PARA MANHATTAN, CORP. d/b/a Sushi Para d/b/a Sushi Para (14th Street) d/b/a Sushi Para (Third Avenue) d/b/a Sushi Para 88 and the New York Division of Alcoholic Beverage Control Principal for SUSHI PARA 33 CORPORATION d/b/a Nomado 33.

30. ZHOU LIN acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d), and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL § 2, and regulations promulgated thereunder, and is jointly and severally liable with SUSHI NOMADO OF MANHATTAN, INC. d/b/a Nomado 33, SUSHI PARA 33 CORPORATION d/b/a Nomado 33, SUSHI PARA MANHATTAN, CORP. d/b/a Sushi Para d/b/a Sushi Para (14th Street) d/b/a Sushi Para (Third Avenue) d/b/a Sushi Para 88.

31. SHENG R DONG (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employee rates and methods of payment, and (4) maintained employee records at SUSHI NOMADO OF MANHATTAN, INC. d/b/a Nomado 33, SUSHI PARA 33 CORPORATION d/b/a Nomado 33, SUSHI PARA MANHATTAN, CORP. d/b/a Sushi Para d/b/a Sushi Para (14th Street) d/b/a Sushi Para (Third Avenue) d/b/a Sushi Para 88.

32. SHENG R DONG is an owner and officer of SUSHI NOMADO OF MANHATTAN, INC. d/b/a Nomado 33, SUSHI PARA 33 CORPORATION d/b/a Nomado 33, SUSHI PARA MANHATTAN, CORP. d/b/a Sushi Para d/b/a Sushi Para (14th Street) d/b/a Sushi Para (Third Avenue) d/b/a Sushi Para 88 and the New York Division of Alcoholic Beverage Control Principal for SUSHI PARA MANHATTAN, CORP. d/b/a Sushi Para d/b/a Sushi Para (14th Street) d/b/a Sushi Para (Third Avenue) d/b/a Sushi Para 88.

33. SHENG R DONG acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d), and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL § 2, and regulations promulgated thereunder, and is jointly and severally liable with SUSHI NOMADO OF MANHATTAN, INC. d/b/a Nomado 33, SUSHI PARA 33 CORPORATION d/b/a Nomado 33, SUSHI PARA MANHATTAN, CORP. d/b/a Sushi Para d/b/a Sushi Para (14th Street) d/b/a Sushi Para (Third Avenue) d/b/a Sushi Para 88.

34. DING FENG ZHANG a/k/a Andy Zhang (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employee rates and methods of payment, and (4) maintained employee records at SUSHI NOMADO OF MANHATTAN, INC. d/b/a Nomado 33, SUSHI PARA 33

CORPORATION d/b/a Nomado 33, SUSHI PARA MANHATTAN, CORP. d/b/a Sushi Para d/b/a Sushi Para (14th Street) d/b/a Sushi Para (Third Avenue) d/b/a Sushi Para 88.

35. DING FENG ZHANG a/k/a Andy Zhang is an owner and officer of SUSHI NOMADO OF MANHATTAN, INC. d/b/a Nomado 33, SUSHI PARA 33 CORPORATION d/b/a Nomado 33, SUSHI PARA MANHATTAN, CORP. d/b/a Sushi Para d/b/a Sushi Para (14th Street) d/b/a Sushi Para (Third Avenue) d/b/a Sushi Para 88 and the New York Division of Alcoholic Beverage Control Principal for SUSHI PARA MANHATTAN, CORP. d/b/a Sushi Para d/b/a Sushi Para (14th Street) d/b/a Sushi Para (Third Avenue) d/b/a Sushi Para 88, and was the person who ordered Plaintiff CAI to cease working at Sushi Para (14th Street) and to begin working at Sushi Para (Third Avenue) on or about March 15, 2015.

36. DING FENG ZHANG a/k/a Andy Zhang acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d), and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL § 2, and regulations promulgated thereunder, and is jointly and severally liable with SUSHI NOMADO OF MANHATTAN, INC. d/b/a Nomado 33, SUSHI PARA 33 CORPORATION d/b/a Nomado 33, SUSHI PARA MANHATTAN, CORP. d/b/a Sushi Para d/b/a Sushi Para (14th Street) d/b/a Sushi Para (Third Avenue) d/b/a Sushi Para 88.

37. Plaintiffs have fulfilled all conditions precedent to the institution of this action and/or conditions have been waived.

## STATEMENT OF FACTS

## CORPORATE DEFENDANTS CONSTITUTE AN ENTERPRISE

38. SUSHI NOMADO OF MANHATTAN, INC. d/b/a Nomado 33, SUSHI PARA 33 CORPORATION d/b/a Nomado 33, SUSHI PARA MANHATTAN, CORP. d/b/a Sushi Para d/b/a Sushi Para (14th Street) d/b/a Sushi Para (Third Avenue) d/b/a Sushi Para 88 all operate a chain

of Japanese restaurants doing business under variations on the names "Nomado" and "Sushi Para" (hereinafter, the enterprise is referred to as "Sushi Para"

39.     At all relevant times herein, Sushi Para, was, and continues to be, single and joint employer and has had a high degree of interrelated and unified operation, and shares common management, centralized control of labor relations, common ownership, common control, common business purposes and interrelated business goals.

40. Sushi Para is an enterprise engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

41. Sushi Para produces, purchases and handles goods moved in interstate commerce.

42. Sushi Para operates three (3) active Japanese restaurants, including:

   a.  Nomado 33, 165 E 33rd Street, New York, NY 10016;

   b.  Sushi Para (14th Street)/Sushi Para 88, 212 W 14th Street, New York, NY 10011; and

   c.  Sushi Para (Third Avenue)/Sushi Para, 1461 Third Avenue, New York, NY 10023.

43. Upon information and belief, employees, including delivery employees and particularly including Plaintiff FEN BIAO CAI, and equipment, are regularly and frequently transferred between the 33rd Street and 14th Street locations.

44. Upon information and belief, the 33rd Street and 14th Street locations share a single delivery manager with the family name "Liu."

45. Sushi Para (14th Street)/Sushi Para 88 and Sushi Para (Third Avenue)/Sushi Para maintain a common website: http://www.sushiparanyc.net/.

46. Additionally, Sushi Para (14th Street)/Sushi Para 88 maintains the website http://www.sushipara88.com/, and Sushi Para (Third Avenue)/Sushi Para maintains the website

http://www.sushiparanyc.com/index.html. Their respective menus, telephone numbers, and business hours listed on those websites are the same as the menus that appear on http://www.sushiparanyc.net/.

47. Nomado 33 maintains the website http://www.nomado33.com/index.html.

## DEFENDANTS COMMITTED THE FOLLOWING ALLEGED ACTS KNOWINGLY, INTENTIONALLY, AND WILLFULLY AGAINST THE PLAINTIFFS, THE FLSA COLLECTIVE, AND THE CLASS

48. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs and similarly situated employees at least the New York minimum wage for each hour worked.

49. While employed by Defendants, Plaintiffs were not exempt under federal and state laws requiring employers to pay employees overtime.

50. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs and similarly situated employees their lawful overtime of one and one-half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

51. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs and similarly situated employees their lawful spread of hours for workdays that began and ended ten (10) hours apart.

52. At all relevant times, Defendants knowingly and willfully failed to keep full and accurate records of Plaintiffs' hours worked and wages paid.

53. Upon information and belief, Defendants failed to keep full and accurate records in order to mitigate liability for wage violations.

54. At all relevant times, Defendants knowingly and willfully failed to furnish Plaintiffs and similarly situated employees notice that they were claiming tip credit towards Plaintiffs' and similarly situated employees' minimum wage.

55. At all relevant times, Defendants knowingly and willfully failed to provide Plaintiffs and similarly situated employees with Time of Hire Notices in their primary languages reflecting rates of pay and payday as well as paystubs that listed the employee's name, the employer's name, the employer's address and telephone number, the employee's rate or rates of pay, any deductions made from employees' wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

56. At all relevant times, Defendants knowingly and willfully failed to provide Plaintiffs and similarly situated employees with statements every payday that accurately listed all of the following: the dates of work covered by that payment of wages; the employee's name; the name of the employer; the address and phone number of the employer; the employee's rate or rates of pay and basis thereof; the employee's gross wages; the employee's deductions; allowances, if any, claimed as part of the minimum wage; net wages; the employee's regular hourly rate or rates of pay; the employee's overtime rate or rates of pay; the employee's number of regular hours worked, and the employee's number of overtime hours worked.

57. Pursuant to 12 NYCRR § 146-2.2 and 29 U.S.C. § 203(m), an employer cannot take credit towards the basic minimum wage if a service employee or food service worker has not received notification of tip credit.

58. Defendants knew that the nonpayment of wages for all hours worked and the nonpayment of wages at one and one-half time (1.5x) employees' regular rates would financially injure Plaintiff and similarly situated employees, and violate state and federal laws.

59. At all relevant times, Defendants failed to post the required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, and pay day.

**PLAINTIFF JIAN WU**

60. From on or about January 1, 2016 to June 15, 2016, and then from on or about December 15, 2016 to May 24, 2017, Plaintiff WU worked for Defendants at Nomado 33 located at 165 E 33rd Street, New York, NY 10016 as a deliveryman.

61. At the time he was hired, Plaintiff WU was not given a written notice in his primary language (Chinese) regarding all of the following items: his rate or rates of pay and basis thereof; allowances claimed as part of the minimum wage; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical and mailing addresses of the employer's main office or principal place of business; and the telephone number of the employer.

62. Plaintiff WU's duties as a deliveryman included delivering Japanese food to customers at their locations outside the restaurant.

63. Plaintiff WU made approximately twenty-five (25) deliveries per day.

64. Throughout his employment, Plaintiff WU's regular work schedule ran from 11:00 to 23:00, twelve (12) hours, Mondays and Tuesdays, and from 18:00 to 23:00, five (5) hours, Wednesdays, Thursdays, and Sundays, for a total of thirty-nine (39) hours per week.

65. Throughout his employment, Plaintiff WU was afforded no rest breaks during his twelve-hour days.

66. Throughout his employment, Plaintiff WU took two meals each on Mondays and Tuesdays, and one meal each on Wednesdays, Thursdays, and Sundays. Plaintiff WU's mealtimes were not fixed. He ate when he could during the day. However, if a delivery order came in during one of Plaintiff WU's breaks, he was required to cut his break short to fill the order.

67. During the course of his employment, Defendants willfully failed to keep records of Plaintiff WU's hours worked.

68. At all relevant times, Plaintiff WU was not paid for all hours worked.

69. Instead, Plaintiff WU was paid at a flat rate of thirty-two dollars ($32.00) per Monday and Tuesday worked, and sixteen dollars ($16.00) per Wednesday, Thursday, and Sunday worked.

70. In addition to his salary, Plaintiff WU made approximately seventy dollars ($70.00) per week in tips.

71. Throughout his employment, Defendants failed to provide Plaintiff WU with statements every payday that accurately listed all of the following: the dates of work covered by that payment of wages;  his name;  the name of the employer;  the address and phone number of the employer; his rate or rates of pay and basis thereof; his  gross wages;  his deductions;  allowances, if any, claimed as part of the minimum wage;  net wages; his regular hourly rate or rates of pay; his overtime rate or rates of pay;  his number of regular hours worked, and his number of overtime hours worked.

72. At no time during Plaintiff WU's employment did Defendants inform him that they were taking a tip credit towards the minimum wage.

73. Plaintiff WU was required to report his tips received to his employer at the end of every day. However, Plaintiff WU received the same salary no matter how much he received in tips.

74. Plaintiff WU was not paid overtime for hours worked above forty (40) in any given workweek.

75. Plaintiff WU was not paid spread of hours for workdays that began and ended ten (10) hours apart.

76. Upon information and belief, throughout Plaintiff WU's employment, there were three (3) other deliverymen employed at Nomado 33 located at 165 E 33rd Street, New York, NY 10016.

77. Upon information and belief, each deliveryman made about twenty-five (25) deliveries per day.

78. Upon information and belief, all deliverymen employed by Defendants are paid at a rate of thirty-two dollars ($32.00) per twelve-hour day worked and sixteen dollars ($16.00) per five-hour day worked, with no provision for overtime and spread of hours.

79. In addition to the deliverymen, upon information and belief, throughout Plaintiff WU's employment, there were four (4) sushi chefs, two (2) waiters, one (1) telephone operator, and three (3) kitchen workers employed at Nomado 33 located at 165 E 33rd Street, New York, NY 10016.

80. In order to perform his duties as a deliveryman for the Defendants' benefit, Plaintiff WU was required to purchase a delivery vehicle.

81. Over the course of his employment, Plaintiff WU spent his own money on vehicle maintenance.

82. Defendants willfully failed to reimburse Plaintiff WU for the purchase and maintenance of the vehicle.

**PLAINTIFF FEN BIAO CAI**

83. From on or about October 1, 2013 to December 31, 2014, Plaintiff CAI worked for Defendants at Sushi Para (Third Avenue), located at 1461 Third Avenue, New York, NY 10028 as a deliveryman.

84. From on or about January 16, 2015 to March 15, 2015, Plaintiff CAI worked for Defendants at Sushi Para (14th Street) located at 212 W 14th Street, New York, NY 10011 as a deliveryman.

85. From on or about March 16, 2015 to November 10, 2017, at the instruction of DING FENG ZHANG a/k/a Andy Zhang, Plaintiff CAI once again worked for Defendants at Sushi Para (Third Avenue), located at 1461 Third Avenue, New York, NY 10028 as a deliveryman.

86. At the time he was hired on or about October of 2013, Plaintiff CAI was not given a written notice in his primary language (Chinese) regarding all of the following items: his rate or rates of pay and basis thereof;  allowances claimed as part of the minimum wage;  the regular pay day designated by the employer;  the name of the employer;  any "doing business as" names used by the employer;  the physical and mailing addresses of the employer's main office or principal place of business; and the telephone number of the employer.

87. At the time he began to work for Defendants again on or about January 2015, Plaintiff CAI was not given a written notice in his primary language (Chinese) regarding all of the following items: his rate or rates of pay and basis thereof;  allowances claimed as part of the minimum wage;  the regular pay day designated by the employer;  the name of the employer;  any "doing business as" names used by the employer;  the physical and mailing addresses of the employer's main office or principal place of business; and the telephone number of the employer.

88. At the time he was transferred from Sushi Para (14th Street) to Sushi Para (Third Avenue), on or about March 2015, Plaintiff CAI was not given a written notice in his primary language (Chinese) regarding all of the following items: his rate or rates of pay and basis thereof;  allowances claimed as part of the minimum wage;  the regular pay day designated by the employer;  the name of the employer;  any "doing business as" names used by the employer;  the physical and mailing addresses of the employer's main office or principal place of business; and the telephone number of the employer.

89. Plaintiff CAI's duties as a deliveryman included delivering Japanese food to customers at their locations outside the restaurant.

90. In addition to his regular duties, however, Plaintiff CAI was given side work, which included but was not limited to preparing and packaging delivery orders. Plaintiff CAI did not earn

tips for performing this side work, and it was not the kind of work for which tips are customarily earned.

91. As a result, Plaintiff CAI spent approximately two (2) hours or twenty percent (20%) of each working day performing non-tipped side work.

92. From on or about October 1, 2013 to December 31, 2014, Plaintiff CAI's regular work schedule ran from 11:00 to 23:00, twelve (12) hours, Mondays through Saturdays, for a total of seventy-two (72) hours per week.

93. From on or about January 16, 2015 to December 31, 2015, at both Sushi Para (14th Street) and Sushi Para (Third Avenue), Plaintiff CAI's regular work schedule ran from 11:30 to 23:00, eleven and one half (11.5) hours, Mondays through Saturdays, for a total of sixty-nine (69) hours per week.

94. From on or about January 1, 2016 to November 10, 2017, Plaintiff CAI's regular work schedule ran from 11:30 to 23:00, eleven and one half (11.5) hours, Fridays through Wednesdays, for a total of sixty-nine (69) hours per week.

95. Throughout his employment, Plaintiff CAI was afforded no rest breaks during the working day.

96. Throughout his employment, Plaintiff CAI took one meal, lunch, during the working day. Plaintiff CAI's mealtimes were not fixed. He ate when he could during the day, for about ten to fifteen minutes. However, if a delivery order came in during Plaintiff CAI's lunch break, he was required to cut his break short to fill the order.

97. During the course of his employment, Defendants willfully failed to keep records of Plaintiff CAI's hours worked.

98. At all relevant times, Plaintiff CAI was not paid for all hours worked.

99. Instead, Plaintiff CAI was paid flat monthly rates that compensated him for the first forty (40) hours he worked each week, but did not compensate him at all for hours worked in excess of forty (40) per week.

100.     From on or about October 1, 2013 to December 31, 2014, and then from on or about January 15, 2015 to May 31, 2016, at both Sushi Para (Third Avenue) and Sushi Para (14th Street), Plaintiff CAI was paid one thousand two hundred dollars ($1,200.00) per month, in cash.

101.     From on or about June 1, 2016 to November 10, 2017, Plaintiff CAI was paid one thousand three hundred dollars ($1,300.00) per month, in cash.

102.     Throughout his employment, Defendants failed to provide Plaintiff CAI with statements every payday that accurately listed all of the following: the dates of work covered by that payment of wages; his name; the name of the employer; the address and phone number of the employer; his rate or rates of pay and basis thereof; his gross wages; his deductions; allowances, if any, claimed as part of the minimum wage; net wages; his regular hourly rate or rates of pay; his overtime rate or rates of pay; his number of regular hours worked, and his number of overtime hours worked.

103.     In addition to his flat monthly rate, Plaintiff CAI earned tips.

104.     However, at no time during Plaintiff CAI's employment did Defendants inform him that they were taking a tip credit towards the minimum wage.

105.     Plaintiff CAI was not paid overtime for hours worked above forty (40) in any given workweek.

106.     Plaintiff CAI was not paid spread of hours for workdays that began and ended ten (10) hours apart.

107.    There was at least one (1) other deliveryman, as well as at least one (1) dishwasher, two (2) waitresses, and one (1)sushi chef employed at Sushi Para (Third Avenue) while Plaintiff CAI worked there in 2017, who worked more than forty (40) hours each week, were paid flat rates—either flat daily rates or flat weekly rates—and were not paid overtime.

## COLLECTIVE ACTION ALLEGATIONS

108.    Plaintiffs bring this action individually and on behalf of all other current and former non-exempt employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and who were not compensated at least the hourly minimum wage and/or overtime for all hours worked in excess of forty (40) per week (the "Collective Action Members.")

## CLASS ACTION ALLEGATIONS

109.    Plaintiffs bring their NYLL claims pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 23, on behalf of all non-exempt personnel employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

110.    All said persons, including Plaintiffs, are referred to herein as the "Class."

111.    The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

*Numerosity*

112.      The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number can be based are presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the Class.

***Commonality***

113.      There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.   Whether Defendant employed Plaintiffs and the Class members within the meaning of the NYLL;

b.   Whether Plaintiffs and the Class members were entitled to and paid minimum wage under the NYLL;

c.   Whether Plaintiffs and the Class members were entitled to and paid overtime under the NYLL;

d.   Whether Plaintiffs and the Class members were entitled to and paid spread-of-hours pay under the NYLL and NYCRR;

e.   Whether Defendants maintained a policy, pattern, and/or practice of failing to provide statutory meal periods;

f.   Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiffs' and the Class members' employment, or timely thereafter;

g.   Whether Defendants provided paystubs detailing the rates of pay and credits taken toward the minimum wage to Plaintiffs and the Class members each payday; and

h.  At what common rate, or rates subject to a common method of calculation were and

are Defendants required to pay the Class members for their work.

*Typicality*

114.     Plaintiffs' claims are typical of those claims which could be alleged by any member

of the Class, and the relief sought is typical of the relief that would be sought by each member of

the Class in separate actions. All the Class members were subject to the same corporate policies

of Defendants, as alleged herein, of failing to pay minimum wage and/or overtime. Defendants'

corporate-wide policies and practices affected all Class members similarly, and Defendants

benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff

and other Class members sustained similar losses, injuries, and damages arising from the same

unlawful policies, practices, and procedures.

*Adequacy*

115.     Plaintiffs are able to fairly and adequately protect the interests of the Class and have

no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced

and competent in representing plaintiffs in both class action and wage-and-hour employment

litigation cases.

*Superiority*

116.     A class action is superior to other available methods for the fair and efficient

adjudication of this controversy, particularly in the context of wage-and-hour litigation where

individual Class members lack the financial resources to vigorously prosecute a lawsuit against

corporate defendants. Class action treatment will permit a large number of similarly-situated

persons to prosecute their common claims in a single forum simultaneously, efficiently, and

without the unnecessary duplication of efforts and expenses that numerous individual actions

engender. Because the losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common class-wide relief. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

117.     Defendants and other employers throughout the state of New York violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

### STATEMENT OF CLAIMS

### COUNT I.
**[Violations of the Fair Labor Standards Act—Nonpayment of Minimum Wage
Brought on behalf of the Plaintiffs and the FLSA Collective]**

118.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

119.     At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs, and the similarly-situated Collective Action Members, for some or all of the hours they worked.

120.     The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 206 shall be liable to the employees affected in the amount of their unpaid minimum compensation, and in an additional amount as liquidated damages.

121.     Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiffs and the Collective Action Members at the statutory minimum wage when they knew or should have known that such was due and that failing to do so would financially injure Plaintiffs and the Collective Action Members.

**COUNT II.**
**[Violations of the New York Labor Law—Nonpayment of Minimum Wage**
**Brought on behalf of the Plaintiffs and the Rule 23 Class]**

122.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

123.     At all relevant times, Plaintiffs were employed by Defendants within the meaning of NYLL N.Y. C.L.S. Labor §§ 2 and 651.

124.     At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs and the Class for some or all of the hours they worked.

125.     Defendants knowingly and willfully violated Plaintiffs' and similarly-situated Class Members' rights by failing to pay them minimum wages in the lawful amount for hours worked.

126.     After April 9, 2011, under the New York Wage Theft Prevention Act 2009 N.Y. S.N. 8380, an employer who fails to pay the minimum wage shall be liable, in addition to the

amount of any underpayments, for liquidated damages equal to one hundred percent (100%) of the shortfall plus interest.

## COUNT III.
### [Violations of the Fair Labor Standards Act—Nonpayment of Overtime Brought on behalf of Plaintiff CAI and the FLSA Collective]

127.     Plaintiff CAI re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

128.     The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for such employment at a rate not less than one and one-half times (1.5x) the regular rate at which he is employed, or one and one-half times (1.5x) the minimum wage, whichever is greater. 29 U.S.C. § 207(a).

129.     Defendants' failure to pay Plaintiff CAI and the FLSA Collective overtime violated the FLSA.

130.     At all relevant times, Defendants had, and continue to have, a policy and practice of refusing to pay overtime at the statutory rate to Plaintiff CAI and the Collective Action Members for all hours worked in excess of forty (40) per workweek, which violated and continues to violate the FLSA, 29 U.S.C §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

131.     The FLSA and supporting regulations require employers to notify employees of the requirements of the employment law. 29 C.F.R. § 516.4.

132.     Defendants willfully failed to notify Plaintiff CAI and the FLSA Collective of the requirements of their employment laws in order to facilitate their exploitation of Plaintiff CAI's and the FLSA Collective Members' labor.

133.     Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff CAI and the Collective Members the statutory

overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known that failing to do so would financially injure Plaintiff CAI and the Collective.

## COUNT IV.
### [Violations of the New York Labor Law—Nonpayment of Overtime
### Brought on behalf of Plaintiff CAI and the Rule 23 Class]

134.    Plaintiff CAI re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

135.    After April 9, 2011, under the New York Wage Theft Prevention Act 2009 N.Y. S.N. 8380, an employer who fails to pay overtime shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to one hundred percent (100%) of the shortfall plus interest.

136.    At all relevant times, Defendants had a policy and practice of refusing to pay overtime at one and one-half times (1.5x) Plaintiff CAI's and the Class Members' regular hourly rate or the minimum wage, whichever is greater.

137.    Defendants' failure to pay overtime violated the NYLL.

138.    Defendants' failure to pay overtime was not in good faith.

## COUNT V.
### [Violations of the New York Labor Law—Failure to Keep Records
### Brought on behalf of the Plaintiffs and the Rule 23 Class]

139.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

140.    Defendants willfully failed to maintain, establish, and preserve Plaintiffs' weekly payroll records for a period of not less than six years, as required by 12 N.Y.C.R.R. § 146-2.1.

141.     As a result of Defendants' unlawful conduct, Plaintiffs have sustained damages including loss of earnings, in an amount to be established at trial, liquidated damages, prejudgment interest, costs, and attorneys' fees, pursuant to state law.

142.     Defendants failed to maintain adequate written records of actual hours worked and wages earned by Plaintiffs in order to facilitate their exploitation of Plaintiffs' labor.

143.     Defendants' failure to maintain adequate and accurate written records of actual hours worked and wages earned by Plaintiffs was not in good faith.

**COUNT VI.**
**[Violations of the New York Labor Law—Failure to Provide Time of Hire Wage Notice**
**Brought on behalf of the Plaintiffs and the Rule 23 Class]**

144.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

145.     NYLL § 195-1(a) requires employers to provide written notice of: the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances clamed, if any, as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer, the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer.

146.     Defendants willfully failed to provide notice to employees in violation of NYLL § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle, and rate of overtime on his or her first day of employment.

147.     Defendants not only did not provide notice to each employee at time of hire, but failed to provide notice even after the fact.

148.     Due to Defendants' violations of NYLL, Plaintiffs are entitled to recover from Defendants, jointly and severally, fifty dollars ($50.00) for each workday that the violation occurred or continued to occur, up to five thousand dollars ($5,000.00) for each Plaintiff, together with costs and attorneys' fees pursuant to NYLL § 198(1-b).

### COUNT VII.
**[Violations of the New York Labor Law—Failure to Provide Pay Stub
Brought on behalf of the Plaintiffs and the Rule 23 Class]**

149.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

150.     NYLL § 195-1(d) requires employers to provide detailed paystub information to employees every payday.

151.     Defendants have failed to make a good faith effort to comply with the NYLL with respect to the compensation of each Plaintiff, and did not provide paystubs on or after each Plaintiff's payday.

152.     Due to Defendants' violations of NYLL, Plaintiffs are entitled to recover from Defendants, jointly and severally, two hundred fifty dollars ($250.00) for each workday that the violation occurred or continued to occur, up to five thousand dollars ($5,000.00) for each Plaintiff, together with costs and attorneys' fees pursuant to NYLL § 198(1-d).

### COUNT VIII.
**[Breach of Implied Contract for Reimbursement of all Costs and Expenses of Vehicles,
including Depreciation, Insurance, Maintenance, and Repairs
Brought on behalf of Plaintiff WU and the Rule 23 Class]**

153.     Plaintiff WU re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

154.     Throughout the relevant period, Defendants required their delivery personnel to bear all of the "out-of-pocket" costs associated with their delivery vehicles, including the purchase,

maintenance, and repair of the delivery vehicles.

155.     Based on his personal experience and available information, Plaintiff WU can document actual "out-of-pocket" vehicle related expenses of his delivery vehicle.

156.     The conduct of Defendants, and the course of Defendant's conduct between the parties, evidenced an intent for Plaintiff WU to maintain his delivery vehicle in working condition.

157.     Plaintiff WU purchased, maintained, and repaired the vehicle at his own expense.

158.     Plaintiff WU performed deliveries for the sole benefit of the Defendants.

159.     Defendants neither explicitly nor implicitly requested Plaintiff WU to cease the maintenance of his vehicle.

160.     As a result of the afore-alleged conduct of the parties, an implied contract arose between them the terms of which are that Plaintiff WU would incur the expenses for vehicle purchases and maintenance, in exchange for compensation from Defendants for such expenses.

161.     Defendants never compensated Plaintiff WU for any expenses incurred from the purchase and maintenance of the vehicles. As a result, Defendants breached the implied contract by failing and refusing to pay Plaintiff WU a reasonable sum under the afore-alleged facts.

162.     Defendants owe Plaintiff WU their overdue costs of vehicles and their repair and maintenance.

## **PRAYER FOR RELIEF**

163.     WHEREFORE, Plaintiffs, on their own behalf, and on the behalf of the FLSA Collective and Rule 23 Class, respectfully request that this Court enter a judgment providing the following relief:

     i.     Certification of this case as a collective action pursuant to FLSA;

j.   Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in Collective, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and their counsel to represent the Collective Action members;

k.   A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

l.   An injunction against Corporate Defendants, their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices and policies set forth herein;

m.   An award of compensatory damages equal to the unpaid minimum wage, overtime, and spread of hours due to Plaintiff and the Collective under FLSA, and to Plaintiff and the Class under the NYLL, plus punitive and/or liquidated damages equal to compensatory damages under the New York Wage Theft Prevention Act for Defendants' willful failure to pay minimum wage, overtime, and spread of hours;

n.   Up to five thousand dollars ($5,000.00) per Plaintiff for Defendants' failure to provide a Time of Hire notice detailing rates of pay and payday;

o.   Up to five thousand dollars ($5,000.00) per Plaintiff for Defendants' failure to provide paystubs that list employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

p.   Reimbursement of reasonable out-of-pocket costs sustained by Plaintiff and similarly situated deliverymen in the purchase, maintenance, and repair of their delivery vehicles in direct service of Defendants;

q.   An award of costs and expenses of this action together with reasonable attorneys' fees and expert fees pursuant to 29 U.S.C. § 216(b) and NYLL §§ 198 and 663;

r.   The costs and disbursements of this action;

s.   An award of prejudgment and post-judgment interest;

t.   Providing that if any amounts remain unpaid upon the expiration of ninety (90) days following the issuance of judgment, or ninety (90) days after expiration of the time to appeal with no appeal then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent (15%), as required by NYLL § 198(4).

u.   Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: January 10, 2019
   Flushing, NY

TROY LAW, PLLC
*Attorneys for the Plaintiff, proposed FLSA*
*Collective and potential Rule 23 Class*


 /s/ John Troy    
John Troy (JT 0481)
41-25 Kissena Boulevard, Suite 119
Flushing, NY 11355
Tel (718) 762-1324
johntroy@troypllc.com