UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JIAN WU and
FEN BIAO CAI,
*on behalf of themselves and other persons
similarly situated*,

                     Plaintiffs,

         -against-

SUSHI NOMADO OF MANHATTAN, INC.
    d/b/a Nomado 33,
SUSHI PARA 33 CORPORATION
    d/b/a Nomado 33,
SUSHI PARA MANHATTAN, CORP.
    d/b/a Sushi Para"
    d/b/a Sushi Para (14th Street)
    d/b/a Sushi Para (Third Avenue)
    d/b/a Sushi Para 88,
WEI LOONG CHAN
    a/k/a Wei Loon Chan,
WENWU CHEN,
ZHOU LIN,
SHENG R DONG, and
DING FENG ZHANG
    a/k/a Andy Zhang,

                   Defendants.

17cv04661 (PGG) (DF)

**MEMORANDUM
AND ORDER**

---

**DEBRA FREEMAN, United States Magistrate Judge:**

      In this action, which is before this Court for general pretrial supervision, plaintiffs

Jian Wu ("Wu") and Fen Biao Cai ("Cai") (collectively, "Plaintiffs") assert claims under the

Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), alleging,

*inter alia*, that they were denied minimum wages and overtime pay while employed by

defendants Sushi Nomado Of Manhattan, Inc. (d/b/a "Nomado 33"), Sushi Para 33 Corporation

(d/b/a "Nomado 33"), Sushi Para Manhattan, Corp. (d/b/a "Sushi Para," "Sushi Para (14th

Street),” “Sushi Para (Third Avenue),” and “Sushi Para 88”), Wei Loong Chan (a/k/a Wei Loon

Chan), Wenwu Chen, Zhou Lin, Sheng R Dong, and Ding Feng Zhang (a/k/a Andy Zhang)

(collectively, “Defendants”).  Currently before this Court is a motion made pursuant to

Section 216(b) of the FLSA, by which Plaintiffs seek conditional certification of a collective of

similarly situated employees and ask this Court to facilitate Court-authorized notice, so that the

similarly situated employees may opt into Plaintiffs’ collective action.  For the reasons that

follow, Plaintiffs’ motion (Dkt. 72) is granted in part and denied in part.

## I.   FACTUAL BACKGROUND

Wu commenced this wage-and-hour action on June 20, 2017, on his own behalf and

purportedly on behalf of those similarly situated.  (*See* Complaint, dated June 20, 2017 (Dkt. 1).)

About eight months later, Dai – then represented by different counsel – commenced a separate

wage-and-hour action in this Court, against certain of the same defendants, on his own behalf

and also purportedly on behalf of those similarly situated.  (*See* Complaint, dated Feb. 6, 2018

(Dkt. 2, in *Cai v. Sushi Para, et al.*, No. 18cv01126 (PGG) (DF)).)  After some procedural

missteps and confusion, the two actions have now been consolidated, via the filing by both

Plaintiffs, on January 14, 2019, of a Consolidated First Amended Complaint.  (*See* Consolidated

First Amended Complaint, dated Jan. 10, 2019 (“Amended Complaint” or “Am. Compl.”)

(Dkt. 71).)

According to the Amended Complaint, Defendants own and operate three Japanese

restaurants in Manhattan:  Nomado 33 on East 33rd Street, Sushi Para 88 on West 14th Street,

and Sushi Para on Third Avenue.  (*Id*. ¶ 42.)  Plaintiffs also plead that each of Defendants’

restaurants are engaged in interstate commerce, have gross annual sales in excess of $500,000,

and have “purchased and handled goods moved in interstate commerce” (*id*. ¶¶ 11-19), bringing

them within the coverage of the FLSA, *see* 29 U.S.C. §§ 206(a), 207(a)(1).  Plaintiffs allege that each of the Defendants qualifies as an "employer" under the FLSA, as each "(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employee rates and methods of payment, and (4) maintained employee records" at one of the aforementioned restaurants.  (Am. Compl. ¶¶ 22, 25, 28, 31, 34.) The nature of Plaintiffs' work for Defendants, as well as Plaintiffs' hours and pay, are summarized below.

### A.   <u>Plaintiff Wu</u>

Plaintiff Wu asserts that he worked as a delivery worker for Defendants at Nomado 33, located on East 33rd Street, from approximately January 1, 2016 to June 15, 2016, and again from December 15, 2016 to May 24, 2017.  (*See* Declaration of John Troy in Support of Motion for Conditional Collective Certification, dated Mar. 20, 2019 ("Troy Decl.") (Dkt. 73), Ex. 5 (Affidavit of Jian Wu in Support of Plaintiff's Motion for Conditional Collective Certification, sworn to Aug. 10, 2018 ("Wu Aff.") (Dkt. 73-5)) ¶ 3; Am. Compl. ¶ 60.)  He contends that, during his first six months of employment at the restaurant, he worked 12 hours per day, two days a week, and five hours per day, three days a week, for a total of 39 hours per week, with no designated rest breaks.  (*See* Wu Aff. ¶¶ 9-12.)

Wu further asserts that, throughout his employment, he was paid a flat rate of $32 per day for his 12-hour work days and a flat rate of $16 per day for his five-hour days.  (*See id.* ¶ 15.) Based on these hours and pay, Wu claims that he was neither paid the required minimum wage nor "spread-of-hours" wages for days he worked more than 10 hours.  (*See id.* ¶¶ 8, 21.)

Additionally, Wu claims that Defendants required him to purchase a delivery vehicle and never reimbursed him for the purchase or maintenance of the vehicle.  (*See* Am. Compl. ¶¶ 80-82.)[1]

**B.**   **Plaintiff Cai**

Plaintiff Cai asserts that he was employed as a delivery worker at two of Defendants' restaurants between 2013 and 2017.  (*See* Troy Decl., Ex. 6 (Affidavit of Fen Biao Cai in Support of Plaintiff's Motion for Conditional Collective Certification, sworn to Dec. 13, 2018 ("Cai Aff.") (Dkt. 73-6)) ¶ 3.)  He states that, from approximately October 1, 2013 to December 31, 2014, he was employed at the Sushi Para location on Third Avenue, where he worked 12 hours per day, six days per week, with no designated rest break each day, for a total of 72 hours per week.  (*See id.* ¶¶ 5-6, 11.)  Further, he states that, from approximately January 16, 2015 to March 15, 2015, he was employed at the Sushi Para location on 14th Street, where he worked 11.5 hours per day, six days per week, with no designated rest break each day, for a total of 69 hours per week.  (*See id.* ¶¶ 7-8, 11.)  Finally, he states that, from approximately March 16, 2015 to November 10, 2017, he was again employed at the Sushi Para location on Third Avenue, where he worked 11.5 hours per day, six days per week, with no designated rest break each day, for a total of 69 hours per week.  (*See id.* ¶¶ 9-11.)

Cai further asserts that he was paid a set amount per month:  $1,200 per month from October 1, 2013 to March 15, 2015, and $1,300 per month from March 16, 2015 to November 10, 2017.  (*See* Cai Aff. ¶¶ 6, 8, 10.)  He generally claims that, during his employment, he was not paid the required minimum wage, spread-of-hours wages, or overtime compensation.  (*See id.* ¶¶ 4, 19.)  Additionally, Cai claims that, apart from his delivery duties,

---

[1] Wu does not specify what type of vehicle he was allegedly required to purchase. Further, as he does not allege that a similar requirement applied to other delivery workers, this Court will not take this allegation into consideration on the present motion.

4

he was required to perform non-tipped "side work," such as preparing and packaging delivery orders, for approximately two hours per day.   (Am Compl. ¶¶ 90, 91.)

Both Wu and Cai allege that they never received wage statements, written notices of their rate of pay, notices of the minimum-wage tip-credit provision, or notification of FLSA and NYLL overtime and wage regulations.  (*See id*. ¶¶ 61, 71-72, 86-88, 102, 104.)

## II.   **PROCEDURAL HISTORY**

As noted above, Plaintiffs filed their Amended Complaint on January 14, 2019 (*see* Am. Compl.), and Defendants filed an Answer on March 28, 2019 (Dkt. 76), denying Plaintiffs' allegations of FLSA and NYLL violations (*see id*.).

On March 20, 2019, Plaintiffs filed their motion for conditional certification of an FLSA collective.  (*See* Notice of Plaintiffs' Motion for Conditional Collective Certification, dated Mar. 20, 2019 (Dkt. 72).)  By their motion, Plaintiffs seek to proceed in this case on behalf of themselves and other similarly situated persons employed by Defendants at any time from June 20, 2014 (three years prior to the date that Wu's original Complaint was filed) to the present.  (*See id*.)

In support of their motion, Plaintiffs have submitted a Declaration by counsel (Troy Decl.) and the Affidavits of Wu and Cai, cited above (*id.*, Exs. 5, 6), as well as a memorandum of law (*see* Memorandum of Law in Support of Plaintiff's Motion for [Conditional Certification and Court-Authorized Notice], dated Mar. 20, 2019 ("Pl. Mem.") (Dkt. 74)).  Following Defendants' failure to file an opposition to Plaintiffs' motion, Plaintiffs addressed a letter to this Court on April 11, 2019, requesting that the motion be granted in its entirety as unopposed.  (*See* Letter Regarding Plaintiffs' Unopposed Motion for Conditional Collective Certification, dated Apr. 11, 2019 ("Pl. 4/11/19 Letter") (Dkt. 78).)

## DISCUSSION

## I.      APPLICABLE LEGAL STANDARDS

### A.      The FLSA and Section 216(b)

Pursuant to the FLSA, an employee must be paid, at least, the federal statutory minimum wage for the first 40 hours that he or she worked in a given work week.  *See* 29 U.S.C. § 206(a). Moreover, an employee is entitled to be paid for overtime hours (*i.e.*, any hours exceeding 40 hours per week), at a "rate not less than one and one-half times the regular rate at which [the employee] is employed."  *Id*. § 207(a)(1); *see also, e.g.*, *Benitez v. Demco of Riverdale, LLC*, No. 14cv7074 (CM), 2015 WL 3780019, at *2 (S.D.N.Y. June 15, 2015) (quoting Section 207(a)(1)).  "The statute of limitations under the FLSA is ordinarily two years, but it may be extended to three years if the claim arises from a 'willful' violation."  *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 258 (S.D.N.Y. 2008) (citing 29 U.S.C. § 255(a)).  To satisfy the willfulness requirement, a plaintiff must demonstrate that the employer either acted knowingly or "showed reckless disregard for the matter of whether its conduct was prohibited by the statute." (*Id.* (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).)

Section 216(b) of the FLSA allows employees to "recover unpaid minimum wages and/or overtime compensation from an employer who violates the [FLSA's] provisions, and permits such an action to be brought as a collective action."  *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 384 (E.D.N.Y. 2010)  Pursuant to Section 216(b),

> [a]n action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b); *see also Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 320 (S.D.N.Y. 2007) (noting that employees can maintain a collective action against an employer where the employees are (1) "similarly situated," and (2) give their consent to become a party in writing).

There are three "essential features" of an FLSA collective action under Section 216(b). *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007).

> First, in order to participate in a collective action, an employee must "opt-in," meaning the employee must consent in writing to join the suit and that consent must be filed with the court. Second, the statute of limitations runs on each employee's claim until his individual Consent Form is filed with the court. Third, to better serve the FLSA's "broad remedial purpose," courts may order notice to other potential similarly situated employees to inform them of the opportunity to opt-in the case.

*Id.* (*quoting Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 173 (1989)).

## B.    Standards for Conditional Certification

"Courts generally determine the appropriateness of class certification at two stages:  first, on the initial motion for conditional class certification, and second, after discovery." *Fasanelli*, 516 F. Supp. 2d at 321 (collecting cases).  On the initial motion, which is typically submitted prior to discovery, a court determines whether potential opt-in plaintiffs are similarly situated to any named plaintiffs, based on the pleadings and affidavits submitted to the court.  *Id.*; *see also In re Penthouse Executive Club Comp. Litig.*, No. 10cv01145 (NRB), 2010 WL 4340255, at *3 (S.D.N.Y. Oct. 27, 2010).  If the court is satisfied that the "similarly situated" standard has been met, it will authorize that notice be sent to potential opt-in plaintiffs.  *Fasanelli*, 516 F. Supp. 2d at 321.  After discovery is complete, the court will evaluate the full record before it, in order to determine whether the opt-in plaintiffs are, in fact, similarly situated.  *Id.*  "If they are not, the

class can be decertified at that time and the claims of dissimilar 'opt-in' plaintiffs dismissed without prejudice." *Id.*

In light of the two-step process, "[t]he burden imposed at [the] first conditional certification stage is minimal." *Amador v. Morgan Stanley & Co.*, No. 11cv4326 (RJS), 2013 WL 494020, at *4 (S.D.N.Y. Feb. 7, 2013) (internal quotation marks and citation omitted; second alteration in original). As discussed further below, the burden at this stage is "low" because "the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (citation omitted; emphasis in original). It is not until the second stage, upon a "full review of the factual record developed during discovery," that the court determines "whether opt-in plaintiffs are *actually* 'similarly situated.'" *Amador*, 2013 WL 494020, at *4 (internal quotation marks and citation omitted; emphasis in original). At bottom, while conditional certification is not automatic, and while a plaintiff's showing in support of certification cannot be entirely conclusory, *see, e.g.*, *Morales v. Plantworks, Inc.*, No. 05cv2349 (DC), 2006 WL 278154, at *2-3 (S.D.N.Y. Feb. 2, 2006), courts have recognized that the standard at this first stage is "'fairly lenient,' [and thus] courts applying it 'typically grant[ ] conditional certification.'" *Amador*, 2013 WL 494020, at *3 (quoting *Malloy v. Richard Fleischman & Assocs. Inc.*, No. 09cv332 (CM), 2009 WL 1585979, at *2 (S.D.N.Y. June 3, 2009)).

"Neither the FLSA nor its implementing regulations define 'similarly situated.'" *Summa*, 715 F. Supp. 2d at 385 (citing *Hoffmann v. Sbarro, Inc.,* 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). Courts in this Circuit have held that named plaintiffs can meet their burden by making a modest factual showing demonstrating that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law. *Myers*, 624 F.3d at 554-55; *see also*

*Summa,* 715 F. Supp. 2d at 385.  Indeed, the relevant question "is not whether [the] [p]laintiffs

and [potential opt-in members are] identical in all respects, but rather whether they were

subjected to a common policy."  *Raniere v. Citigroup Inc.*, 827 F. Supp. 2d 294, 323 (S.D.N.Y.

2011) (internal quotation marks and citation omitted), *rev'd on other grounds*, 533 F. App'x 11

(2d Cir. 2013).  The fact that a potential class may involve employees in "a variety of diverse

positions . . . does not undermine the conditional certification of the class since 'under [S]ection

216(b) parties may be similarly situated, despite not occupying the same positions or performing

the same job functions and in the same locations, provided that they are subject to a common

unlawful policy or practice.'"  *Summa*, 715 F. Supp. 2d at 390 (quoting *Colozzi v. St. Joseph's

Hosp. Health Ctr.*, 595 F. Supp. 2d 200, 207 (N.D.N.Y. 2009)); *see also Lynch*, 491 F. Supp. 2d

at 369 (noting that "any factual variances that may exist between the plaintiff and the putative

class do not defeat conditional class certification" because the court may later, after having the

benefit of full discovery, "decertify the class or divide it into subclasses, if appropriate" (citations

omitted)).

      Further, at this initial procedural stage, the Court does not "resolve factual disputes,

decide substantive issues going to the ultimate merits, or make credibility determinations."

*Shillingford v. Astra Home Care, Inc.*, 293 F. Supp. 3d 401, 407 (S.D.N.Y. 2018) (quoting

*Hypolite v. Health Care Servs. of N.Y., Inc.*, 256 F. Supp. 3d 485, 489 (S.D.N.Y. 2017)); *see also

Lynch,* 491 F. Supp. 2d at 368 ("Indeed, a court should not weigh the merits of the underlying

claims in determining whether potential opt-in plaintiffs may be similarly situated." (citations

omitted)); *Bijoux v. Amerigroup N.Y.*, *LLC*, No. 14cv3891 (RJD) (VVP), 2015 WL 4505835,

at *3 (E.D.N.Y. July 23, 2015) ("[A]t this stage, the court's task is only to conclude whether

there *may be* other similarly situated workers, and [the court] need not evaluate the underlying

merits of a plaintiff's claims." (internal quotation marks and citations omitted; emphasis in original)), *report and recommendation adopted*, 2015 WL 5444944 (Sept. 15, 2015). Thus, "the focus of this inquiry . . . is not on whether there has been an actual violation of law[,] but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005). Additionally, as "the initial class certification determination [is] made . . . on preliminary documents such as pleadings and affidavits," the determination is "necessarily [based on] unproven allegations." *Fasanelli*, 516 F. Supp. 2d at 321-22 (rejecting defendant's arguments that declarations provided by plaintiff should not be relied upon because they contained "inadmissible hearsay, speculation, personal beliefs and conclusions," and granting conditional certification).

Even so, to meet his or her burden on a motion for conditional certification, a plaintiff must do more than make unsupported assertions. Rather, a plaintiff must make a facially adequate showing that putative members of the collective are similarly situated "with respect to the FLSA violations [the named plaintiff] allege[s] – not other factors." *Bijoux*, 2015 WL 4505835, at *3 (noting that a modest factual showing cannot rest on unsupported assertions, but that a plaintiff can meet his or her burden by supplementing the pleadings with other evidence, such as affidavits from named plaintiffs, opt-in plaintiffs, or other putative collective action members (citations omitted)). A plaintiff must meet this minimal burden, even if the motion is unopposed by the defendants. *See Tate v. WJL Equities Corp.*, No. 13cv8616 (JLC), 2014 WL 2504507, at *1 (S.D.N.Y. June 3, 2014).

C.     **Court Authorized Notice**

Once a court determines that a named plaintiff has demonstrated that he or she is similarly situated to other employees of the defendant with respect to the defendant's alleged unlawful policy for paying minimum wages and/or overtime pay, and has thus satisfied his or her burden for initial certification of a collective action, the court may proceed to authorize issuance of a notice informing potential additional plaintiffs of their opportunity to opt into the lawsuit. *Lynch,* 491 F. Supp. 2d at 367. "Although Section 216(b) does not explicitly address court-authorized notice, 'it is well settled that district courts have the power to authorize an FLSA plaintiff to send such notice to other potential plaintiffs.'" *Grant v. Warner Music Grp. Corp.*, No. 13cv4449 (PGG), 2014 WL 1918602, at *2 (S.D.N.Y. May 13, 2014) (quoting *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003); internal quotation marks and additional citations omitted).

Indeed, as the statute of limitations does not toll for opt-in plaintiffs until they consent to appear, *see Lynch*, 491 F. Supp. 2d at 371, courts will "routinely approve court-authorized notice in order to ensure that the rights of potential claimants do not expire during the discovery process." *Grant*, 2014 WL 1918602, at *2; *see also Khamsiri v. George & Frank's Japanese Noodle Rest. Inc., No.* 12cv265 (PAE), 2012 WL 1981507, at *2 (S.D.N.Y. June 1, 2012) ("[C]ourt-authorized notice is appropriate[ ] to prevent erosion of claims due to the running statute of limitations . . . .").

> [C]ourt-supervised notice is the preferred method for managing the notification process for several reasons:  it avoids "multiplicity of duplicative suits;" it allows the court to set deadlines to advance the disposition of an action; it furthers the "wisdom and necessity for early judicial intervention" in multi-party actions; and it protects plaintiffs' claims from expiring under the statute of limitations.

*Lynch*, 491 F. Supp. 2d at 367 (quoting *Hoffmann-La Roche*, 493 U.S. at 171-72).

"[T]he form and content of the notice" should be "approved by the [c]ourt prior to mailing," in order to prevent "after-the-fact disputes between counsel" regarding the form and manner of the notice and the opt-in plaintiffs' consent form. *Krueger v. New York Tel. Co.*, No. 93cv0178 (LMM), 1993 WL 276058, at *3 (S.D.N.Y. July 21, 1993) (citing *Hoffmann-La Roche*, 493 U.S. at 170). As "neither the FLSA nor the courts 'have specifically outlined what form court-authorized notice should take,'" *Amador*, 2013 WL 494020, at *9 (quoting *Fasanelli*, 516 F. Supp. 2d at 323), the content of the notice is left to the court's broad discretion, *see Fasanelli*, 516 F. Supp. 2d at 323 (citing *Hoffmann-La Roche*, 493 U.S. at 170, and noting that "[t]he Supreme Court has abstained from reviewing the contents of a proposed notice under § 216(b), noting that such 'details' should be left to the broad discretion of the trial court"). When exercising discretion, courts should consider the overarching policies of the notice provisions of Section 216(b), such policies which include achieving judicial efficiency and lowering individual costs for plaintiffs. *Id.* "[T]hese benefits 'depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'" *Id.* (quoting *Hoffmann-La Roche*, 493 U.S. at 170).

## II.   PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF A PROPOSED COLLECTIVE

As set out above, the question for the Court on Plaintiffs' motion for conditional certification of an FLSA collective focuses "on whether the proposed plaintiffs are 'similarly situated' . . . with respect to their allegations that the law has been violated." *Young*, 229 F.R.D. at 54 (citation omitted). In their Amended Complaint, Plaintiffs purport to bring this action individually and on behalf of "all other current and former non-exempt employees" who were

employed by Defendants from June 20, 2014 to June 20, 2017, and who were not correctly paid under the FLSA.  (Am. Compl. ¶ 108.)  Plaintiffs assert that a collective here should cover all non-exempt employees of Defendants because "[a]ll the Class members were subject to the same corporate policies of . . . failing to pay minimum wage and/or overtime."  (*Id.* ¶ 114.) Defendants have not opposed Plaintiffs' motion, but, as set out above, this does not relieve Plaintiffs from meeting their burden to make at least a modest showing that the categories of workers whom they seek to include in the collective, were, in fact, similarly situated to them, with respect to Defendants' allegedly unlawful policies.[2]  *See Tate*, 2014 WL 2504507, at *1.

While Plaintiffs argue persuasively that their Amended Complaint and Affidavits demonstrate their entitlement to proceed as a collective action under the FLSA (*see* Am. Compl. ¶¶ 108-17), their submissions offer varying degrees of information about the categories of workers that Plaintiffs seeks to include in their proposed collective.  Upon its review of Plaintiffs' submissions, the Court finds it appropriate to grant conditional certification of an FLSA collective action here, but not to permit a collective as broad as Plaintiffs request.  As discussed further below, Plaintiffs have adequately demonstrated, at this stage, that certain

---

[2] This Court notes that a prior Scheduling Order, issued in the case commenced by Wu, set the close of discovery at August 1, 2018.  (*See* Dkt. 23.)  In light of the filing of the separate action by Cai, however (*see* Factual Background, *supra*) and the subsequent motion to consolidate, some uncertainty ensued regarding the discovery schedule.  In any event, even if discovery as to the claims of Wu and Cai has been conducted, discovery has presumably not been conducted regarding other employees who may seek to opt into a collective action. Accordingly, it is this Court's understanding that the current discovery record would be insufficient at this time to enable it to undertake – as would generally be appropriate at the second step of the certification process – a "full review of the factual record developed during discovery." *Amador*, 2013 WL 494020, at *4 (internal quotation marks and citation omitted). Regardless of the age of this case, therefore, this Court will review Plaintiffs' motion based on the standard typically used at the first (pre-discovery) step in the certification process, which, as set out above, only requires Plaintiffs to meet a minimal burden to show the appropriateness of the proposed collective.  (*See* Discussion, *supra*, at Section I(B).)

identified categories of workers – including delivery workers, sushi chefs, food packers, dishwashers, and wait staff – were similarly situated to them with respect to Defendants' allegedly unlawful pay practices under the FLSA (such that these categories of workers should conditionally be included in a collective), but Plaintiffs have not made such a showing with respect to other categories of workers (specifically including receptionists), and certainly not "all non-exempt employees."[3]

### A.   Delivery Workers

Plaintiffs Wu and Cai (who state that they, themselves, worked as delivery workers) have both provided detailed descriptions of the hours they worked, the manner in which they were paid, and the amount of their wages.  Based on those descriptions, Wu and Cai contend that, during the proposed collective period, they were neither compensated at the required minimum wage, nor paid appropriate overtime pay for all the hours they worked over 40 hours each week. (Wu Aff. ¶ 8; Cai Aff. ¶¶ 4, 6, 8, 10.)  From this, a court "may infer" that other delivery workers employed by Defendants "worked similar shifts for comparable pay, thereby suffering the same violations of the FLSA."  *Lianhua Weng v. Kung Fu Little Steamed Buns Ramen Inc.*, No. 17cv273 (LAP), 2018 WL 1737726, at *3 (S.D.N.Y. Mar. 26, 2018) (quoting *She Jian Guo v. Tommy's Sushi Inc.*, No. 14cv3946 (PAE), 2014 WL 5314822, at *3 (S.D.N.Y. Oct. 16, 2014)); *see also Cheng Xia Wang, et al. v. Shun Lee Palace Restaurant, Inc. et al.*, No. 17cv840 (VSB), 2018 WL 3155835, at *4 (S.D.N.Y. June 28, 2018) (finding that certification was proper for all deliverymen based on the experience of the named plaintiffs, who were deliverymen).

---

[3] It is not clear whether Defendants employ any category of workers other than those identified in Plaintiffs' Affidavits and expressly discussed herein.  Certainly, it cannot be said that a "job-specific factual showing" has been made regarding any other category of worker. *Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 565 (S.D.N.Y. 2015).

Furthermore, in their Affidavits, both Wu and Cai provide relevant information from conversations that they had with other delivery workers, identified in their Affidavits as "Wu," "Wu," "Head Liu," and "Old Jiang."  First, plaintiff Wu attests to his understanding that another delivery worker, also surnamed Wu, started working at the Defendants' 33rd Street location in 2015 and was paid $920 per month, regardless of how many hours he worked.  (Wu Aff. ¶¶ 28, 30, 34, 38.)  Second, plaintiff Wu attests that he knew another delivery worker, also surnamed Wu, who started working at Defendants' 33rd Street location in 2012 and was also paid $920 per month, regardless of how many hours he worked.  (*Id*. ¶¶ 39, 43, 48, 50.)  Third, Wu states that he knew a delivery worker whom the delivery workers called "Delivery Head" Liu.  (*Id*. ¶¶ 66-67, 70-71.)  According to Wu, he had conversations with Liu, in which he learned that Liu started working at Defendants' 33rd Street and 14th Street locations in approximately 2011.  Wu also learned that Liu was paid $1,500 per month, without overtime wages, for working approximately 46 hours per week.  (*Id*. ¶¶ 75-79.)  Lastly, Cai attests to his understanding that a delivery worker known as "Old Jiang," who started working for Defendants at the Third Avenue location on or about March 2017, was paid $30 per day for six hours of work, including some non-tipped work.  (Cai Aff. ¶¶ 26-32.)

These types of attestations by plaintiffs have generally been found sufficient to support conditional certification of a collective action, including the types of workers identified.  *See, e.g.*, *Guo Qing Wang v. H.B. Rest. Grp., Inc.*, No. 14cv813 (CM), 2014 WL 5055813, at *4 (S.D.N.Y. Oct. 7, 2014) (certification was proper based on the plaintiff's observations and conversations with his coworkers who worked in excess of 40 hours); *Gjurovich*, 282 F. Supp. 2d at 104 (collective certification appropriate where plaintiff made "substantial allegations in his complaint[] and in his sworn declaration" that he received the same salary regardless of the

number of hours he worked and established a sufficient factual nexus between his situation and the situation of other employees).

Accordingly, based on Plaintiffs' accounts of their own alleged experiences of having been employed by Defendants as delivery workers and having been paid improperly under the FLSA, as well as Plaintiffs' specific accounts of the similar experiences of other delivery workers, the Court finds that Wu and Cai have met their "light burden of making a 'modest factual showing'" that Plaintiffs and other delivery workers "were victims of a common policy or plan that violated the law," *Sanchez v. Gansevoort Mgmt. Grp., Inc.*, No. 12cv75 (KBF), 2013 WL 208909, at *1 (S.D.N.Y. Jan. 10, 2013) (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)), rendering appropriate the conditional certification of a collective that includes such workers.

### B.   <u>Sushi Chefs</u>

Plaintiffs have also made a sufficient showing to permit the inclusion in the collective of the category of employees identified by Plaintiffs as "sushi chefs." (*See* Wu Aff. ¶ 51; Cai Aff. ¶ 37.) Wu states that he knew a sushi chef (whom everyone called "Big Chef," despite his small stature) who, according to Wu, was employed at the 33rd Street location and worked 75 hours per week from approximately 2011 to April 2016. (Wu Aff. ¶¶ 51-54.) Following conversations with "Big Chef," Wu states that he learned that "Big Chef" did not receive overtime wages, despite working hours in excess of 40 per week. (*Id.* ¶¶ 55-56.) Additionally, Cai describes a sushi chef he knew as "A Pi," who, according to Cai, had worked 66 hours per week at Defendants' Third Avenue location, since 2016. (Cai Aff. ¶¶ 37-40.) During a conversation with him, Cai reportedly learned that "A Pi" had been paid a flat rate of $700 per week, regardless of how many hours he worked. (*Id.* ¶¶ 41-43.)

These personal conversations recounted by Plaintiffs are sufficient to establish that sushi chefs were also subjected to the allegedly common practice of failing to pay overtime wages. *See Diatta v. Iguana New York Ltd.,* No. 15cv6399 (AT), 2016 WL 2865132, at *3 (S.D.N.Y. May 10, 2016) (certification was proper where plaintiffs attested that they had spoken to other employees in the kitchen of the restaurant who confirmed that their salary was fixed regardless of how many hours they worked).

Additionally, despite the fact that Plaintiffs' statements only relate to sushi chefs at two of Defendants' three restaurant locations, sushi chefs from all three locations may be permitted to join the collective. This is because "named plaintiffs [may be found] to be similarly situated to employees at locations where they did not work, provided that the plaintiffs demonstrate that they were all subject to the same allegedly unlawful policy or practice." *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013). In determining whether plaintiffs have met this burden, "[c]ourts consider whether the plaintiffs have made an adequate showing to support an inference that such a uniform policy or practice exists, and whether the locations share common ownership or management." *Id.*

Cai has demonstrated a basis for having knowledge of the 14th Street location's practices, as he worked there himself. *See id.* at 663 (finding plaintiffs' personal accounts of an unlawful practice at one station in Queens and one station in the Bronx "sufficient to infer, at this early stage in the litigation, that a common practice may have existed among the other stations"). Further, Plaintiffs allege that Defendants shared in the ownership of the restaurants at each of the cited locations (*see* Am. Compl. ¶¶ 39, 42), and Cai, in his Affidavit, supports Plaintiffs' contention of common management, by stating that Defendant Zhang instructed him to return to the Third Street location after he had worked for three months at the 14th Street location (*see* Cai

Aff. ¶ 9).  Consequently, Plaintiffs have made an adequate showing to support an inference that

sushi chefs employed at all three locations were similarly situated with respect to Defendants'

claimed unlawful pay policies, such that this category of workers, at all locations, should be

permitted to join the collective at this stage.  *See Hamadou*, 915 F. Supp. 2d at 663; *see also*

*Harhash v. Infinity West Shoes*, *Inc.*, No. 10cv8285 (DAB), 2011 WL 4001072, at *3 (S.D.N.Y.

2011) (finding employees similarly situated despite performing different job functions or

working at different locations).

### C.    Food Packers

Wu has also made a sufficient showing to permit inclusion in the collective of the

category of employees that he identifies as "packers."  This Court understands that packers are

responsible for packing bags of food for customers.  (Wu Aff. ¶ 62.)  Wu states that, at

Defendants' 33rd Street location, he befriended a packer who had worked there since 2013 (*see*

*id*. ¶¶ 58, 60-61), and further states that, based on conversations with this friend, he learned that

that she customarily worked between 60 and 72 hours per week, but was never paid overtime

wages (*see id*. ¶¶ 63-65).

Wu's account of a personal conversation with an employee regarding Defendants' failure

to pay her overtime wages, despite her working more than 40 hours per week, is sufficient to

show that employees in her position may have been subject to the same allegedly common

unlawful practice.  *See, e.g*., *Guo Qing Wang*, 2014 WL 5055813, at *4; *Gjurovich*, 282 F. Supp.

2d at 104.  Additionally, as discussed above, food packers employed at all three of Defendants'

restaurant locations may join the collective despite Wu's account relating only to food packers at

the 33rd Street location.  (*See* Discussion, *supra*, at Section II(B).)  Even though Wu has no

personal knowledge of the practices at other locations, there is still enough information to permit

a reasonable inference of common practices due to Plaintiffs' allegations of Defendants' common ownership and management of the restaurants.  *See Hamadou*, 915 F. Supp. 2d at 662.

### D.   Dishwashers

Cai has also made a showing sufficient to permit inclusion in the collective of the category of employees identified by Cai as "dishwashers."  Cai attests to his understanding that a dishwasher who was employed at the Third Avenue restaurant location for one month in 2016 was paid a flat rate of $500 per week, although he worked 11 hours per day.  (Cai Aff. ¶¶ 33-36.) Cai states that he became aware of this dishwasher's pay rate during a conversation the two had regarding their wages.  (*Id.* ¶ 35.)  At this stage, this reported personal conversation is adequate to support Plaintiffs' contention that dishwashers at the Third Avenue location were subjected to the allegedly common unlawful practice of non-payment of overtime wages.  *See Diatta*, 2016 WL 2865132, at *3.

For the same reasons discussed above, it is appropriate for the collective to be defined broadly enough to include workers in this category across all of Defendants' restaurant locations. (*See* Discussion, *supra*, at Section II(B); *see also Hamadou*, 915 F. Supp. 2d at 662.)

### E.   Wait Staff

Additionally, Cai has made a sufficient showing to permit inclusion in the collective of the category of employees identified by Plaintiffs as "waiters" or "waitresses."  (*See* Cai Aff. ¶¶ 45, 53; *see also* Wu Aff. ¶ 93.)  Cai reportedly had at least one personal conversation with a member of the wait staff that led him to understand that waiters and waitresses were also subject to the Defendants' allegedly common unlawful practice of not paying overtime wages.  Cai states that, at the Third Avenue location, he befriended two waitresses who had been employed by Defendants since 2016.  (*See* Cai Aff. ¶¶ 45, 47-48, 53, 55.)  One reportedly told him

19

personally that, despite working 66 hours per week, she was never paid overtime wages.  (*See id.* ¶¶ 50-52.)  Cai's account of his conversation with this employee satisfies Plaintiffs' burden to make a modest factual showing that wait staff employed by Defendants were similarly situated to Plaintiffs, with respect to Defendants' challenged pay policies.  *See Garcia v. Spectrum of Creations Inc.*, 102 F. Supp. 3d 541, 548-49 (S.D.N.Y. 2015) (determining that a single employee's affidavit was sufficient evidence of employees being similarly situated because it recounted interactions with specifically identified employees, even if only at a single location); *see also Fasanelli*, 516 F. Supp. 2d at 321-22 (finding that a plaintiff may make the required showing on the basis of unproven allegations, including hearsay).

Furthermore, for the reasons discussed above, this Court finds that wait staff employed at all three of Defendants' restaurant locations may join the collective despite Cai's account relating only to wait staff at the Third Avenue location.  (*See* Discussion, *supra*, at Section II(B)).

### F.    <u>Receptionists</u>

Finally, Plaintiffs seek to include in the proposed collective a category of employees referred to as "receptionists" (Wu Aff. ¶ 80), but, in this instance, Plaintiffs have not made the requisite showing that such inclusion would be appropriate.

Wu reportedly had conversations with two receptionists at the 33rd Street location.  (*See id.*)  According to Wu, the male part-time receptionist complained about the restaurant's low wages (*see id.* ¶¶ 95-96), and the young female receptionist, who reportedly worked two days per week and 12 hours each day, also commiserated with Wu over her "extremely low wages."  (*Id.* ¶¶ 82, 85, 90.)  Wu does not state, however, that he has any knowledge as to whether these receptionists' hourly rates of pay actually fell below the federal minimum wage, and his vague

statements regarding their "low" wages do not suffice to evidence that their pay rates were unlawful. Moreover, as both of the two referenced receptionists purportedly worked part-time, it does not appear that they would have been denied overtime pay.

"While [a p]laintiff's burden of proof is low, it is not non-existent." *Romero v. H.B. Automotive Group, Inc*., No. 11cv386 (CM), 2012 WL 1514810, at *10 (S.D.N.Y. May 1, 2012). Here, Plaintiffs have failed to make even a modest showing that receptionists employed by Defendants were actually subject to any of the unlawful pay policies or practices alleged in the Amended Complaint. Accordingly, this Court will not conditionally certify a collective that includes receptionists. *See, e.g.*, *Weng*, 2018 WL 1737726, at *4 (denying collective certification with regard to wait staff when it was "unclear whether [waiter] was actually paid less than minimum wage or denied lawfully owed overtime pay").

### G.   Other Categories of Non-Exempt Workers

As noted above, Plaintiffs go so far as to assert that all non-exempt employees of Defendants were subject to a common policy that denied them overtime pay, stating in their moving brief, "that Plaintiffs [and] all other non-exempt workers 'were victims of a common policy or plan that violated the law.'" (Pl. Mem., at 13 (quoting *Sanchez*, 2013 WL 208909, at *1).) Plaintiffs, however, offer no substantive information in their Amended Complaint or Affidavits about any categories of workers other than those discussed above. At most, Wu and Cai both state that "the unwritten rule at Defendants' restaurants is that no one can get overtime premiums." (Wu Aff. ¶ 57; Cai Aff. ¶ 44.) A statement such as this is too conclusory to permit even conditional certification of a collective that includes additional categories of workers. *See Sanchez v. JMP Ventures, L.L.C.,* No. 13cv7264 (KBF), 2014 WL 465542, at *2 (S.D.N.Y.

Jan. 27, 2014) (plaintiff's "generalized allegations" regarding defendants' "common practices"

were insufficient to permit certification).

       Of course, courts may conditionally certify collectives of individuals with a variety of job

titles, but only where a common unlawful policy is shown. *See Cano v. Four M Food Corp.*,

No. 08cv3005 (JFB) (AKT), 2009 WL 5710143, at *9 (E.D.N.Y. Feb. 3, 2009) ("Even though

plaintiffs are certainly not required to show that they are identically situated, or that they possess

the same attributes with respect to their job, they are required to show that they are subject to the

same common policy or plan by defendants.").  To justify including different categories of

workers in an FLSA collective, a "modest but *job-specific* factual showing" is required.  *Yap*,

146 F. Supp. 3d at 565 (citing *She Jian Guo*, 2014 WL 5314822, at *3); *accord Shanfa*

*Li v. Chinatown Take-Out Inc.,* No. 16cv7787 (JCM), 2018 WL 1027161, at *5 (S.D.N.Y.

Feb. 21, 2018) (quoting *Yap*).  In *Yap*, while conditionally certifying a collective of deliverymen

and chefs, the court rejected plaintiffs' contention that their allegations regarding those two

categories of workers would "allow the Court to draw an 'inference' that [d]efendants 'failed to

pay other employees such as wait staff, bussers, etc., their entitled overtime.'"  *Yap*, 146 F. Supp.

3d at 565 (record citation omitted).  Similarly, in *Colon v. Major Perry St. Corp.*, No. 12cv3788

(JPO), 2013 WL 3328223 (S.D.N.Y. July 2, 2013), the court conditionally certified a collective

that included superintendents, but not handymen, where plaintiff's "affidavit offer[ed] only a

brief sketch" regarding handymen and there was "no basis for concluding that these two groups

were subject to the same policy."  *Id*. at *7.  Here, Plaintiffs have not even offered a brief sketch

of the hours and compensation of groups of workers other than those identified and discussed

above.

III.     **SCOPE AND FORM OF COURT-AUTHORIZED NOTICE**

In light of the above rulings, the Proposed Notice of Pendency submitted by Plaintiffs

(Troy Decl., Ex. 4) must be modified to some extent, consistent with this Court's Order, and as

discussed below.

A.      **Appropriate Notice Period**

Given Plaintiffs' allegations of willful violation of the FLSA minimum wage and

overtime provisions, the Court agrees with Plaintiffs that the relevant period for this collective

should run from June 20, 2014 (*i.e.*, three years prior to the original filing of Wu's case) to the

date of final judgment in the action.  While Defendants deny any willful violations (*see* Answer

¶¶ 1-3), this is of no moment for purposes of defining the scope of the collective.  *See*

*Hamadou*, 915 F. Supp. 2d at 668 ("Where willfulness is disputed, the court applies the

three-year statute of limitations for purposes of certifying a representative action.").

B.      **Appropriate Opt-In Period**

Plaintiffs did not propose a specified length for the opt-in period for potential plaintiffs

who may wish to join the collective.  In similar cases, however, this District has approved a

60-day opt-in period, which this Court finds appropriate here.  *See, e.g.*, *Racey v. Jay-Jay*

*Cabaret, Inc.*, No. 15cv8228 (KPF), 2016 WL 3020933, at *7 (S.D.N.Y. May 23, 2016) (finding

that a 30-day opt-in period was too short "to effect [n]otice on the potential opt-in plaintiffs");

*Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451-52 (S.D.N.Y. 2011)

(collecting cases).

C.      **Equitable Tolling**

Plaintiffs also request that the statute of limitations for potential plaintiffs' claims "be

tolled for 90 days until the expiration of the Opt-In Period."  (Pl. Mem., at 18.)  In support of this

request, Plaintiffs express concern because "the statute of limitations period continues to run with respect to each potential plaintiff's collective action claim until that plaintiff files the written consent form opting into the suit." (*Id.*, at 17.)  Equitable tolling, however, is applicable only in "rare and exceptional circumstances."  *Phillips v. Generations Family Health Ctr.*, 723 F.3d 144, 150 (2d Cir. 2013) (quoting *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011)).

A "district court may toll the limitations period to avoid inequitable circumstances, giving due consideration to whether the plaintiffs have acted with reasonable diligence in pursuing their claims and whether the circumstances are extraordinary enough to warrant equitable relief."  *Viriri v. White Plains Hosp. Med. Ctr.*, 320 F.R.D. 344, 355 (S.D.N.Y. 2017) (quoting *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014)).  In particular, some courts have tolled the statute of limitations for the claims of potential opt-in plaintiffs for the period of time that a motion for conditional certification has been *sub judice*, *see id.*, although it has also been held that delay by the court in deciding the motion will not justify equitable tolling, absent a showing that the litigants seeking to benefit from the tolling have acted diligently to protect their rights, *see Knox v. John Varvatos Enterprises Inc.*, 282 F. Supp. 3d 644, 658 (S.D.N.Y. 2017).

In any event, several courts have "declined to apply equitable tolling where the delay, in their view, was not of such a magnitude as to warrant tolling."  *Viriri,* 320 F.R.D. at 355; *see also Mark v. Gawker Media LLC*, No. 13cv4347 (AJN), 2014 WL 5557489, at *2 (S.D.N.Y. Nov. 3, 2014) (declining equitable tolling where 11 months had passed since the filing of the motion for conditional certification, and finding that "the time delay between the date [p]laintiffs filed the motion and its resolution. . . was not extraordinary" (internal quotation marks omitted)).

24

Courts have also found that a determination as to equitable tolling would be premature, prior to a showing that the claims of any potential opt-in would be barred as the result of a notice delay. *See Whitehorn*, 767 F. Supp. 2d at 450 (finding that plaintiff's request to toll the statute of limitations was premature, as it was yet unclear whether or not any potential plaintiffs would be barred from the action due to a delay in notice).

　　　In this case, Plaintiffs' motion for conditional certification was filed on March 20, 2019. There has been no substantial gap between the time the motion was filed and the date of this decision, and, in fact, the time taken by this Court to decide the motion has been less than the 11 months in *Mark,* where the court declined to find equitable tolling.  *See* 2014 WL 5557489, at *2-3.  Moreover, Plaintiffs have not demonstrated that the claims of any potential opt-in plaintiffs would actually be barred as the result of any delay occasioned by the Court or by the terms of the notice.  *See Whitehorn*, 767 F. Supp. 2d at 450.  For these reasons, Plaintiffs' request that this Court make a determination of equitable tolling is denied, without prejudice to the rights of potential opt-in plaintiffs to make a further application for tolling upon an appropriate showing of exceptional circumstances and the requisite diligence.

　　　**D.　　Language of the Notice**

　　　Plaintiffs request that all notices or posts to employees' attention be in English, Chinese, Spanish, and Malay/Indonesian, as many employees of Defendants' restaurants are not well versed in the English language.  (*See* Pl. Mem., at 16.)  This type of request has been granted in other cases, *see, e.g.*, *Iriarte v. Cafe 71, Inc*., No. 15cv3217 (CM), 2015 WL 8900875, at *6 (S.D.N.Y. Dec. 11, 2015) (citing *Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 635 (S.D.N.Y. 2007)); *see also Castillo v. Perfume Worldwide Inc.*, No. CV 17-2972 (JS) (AKT), 2018 WL 1581975, at *15 (E.D.N.Y. Mar. 30, 2018) (finding that, in light of broad remedial

purpose of FLSA, translating a notice into Spanish was appropriate), and this Court finds it reasonable and appropriate in this case, to increase the effectiveness of the notice in reaching potential opt-in plaintiffs. Accordingly, Plaintiffs are granted leave to send out notice of the collective action in both English, Chinese,[4] Spanish, and Malay/Indonesian.

### E.   Defendants' Production of Contact Information for Potential Opt-In Plaintiffs

In order to facilitate the provision of notice, Plaintiffs request that Defendants produce a Microsoft Excel data file containing contact information ("including but not limited to last known mailing addresses, last known telephone numbers, last known email addresses, last known WhatsApp, WeChat and/or Facebook usernames, work location, dates of employment, and position") for all non-managerial employees who worked for Defendants from June 20, 2014 to the present day. (Pl. Mem., at 14.) Courts in this District "commonly grant" requests for the production of such information, in connection with the conditional certification of an FLSA collective action. *Martin v. Sprint/United Mgmt. Co.*, No. 15cv5237 (PAE), 2016 WL 30334, at *19 (S.D.N.Y. Jan. 4, 2016); *see also In re Penthouse Exec. Club Comp. Litig.*, No. 10cv1145 (NRB), 2010 WL 4340255, at *5 (S.D.N.Y. Oct. 27, 2010) (noting that "courts often order the production of such information at the notice stage").

Accordingly, Plaintiffs' request that Defendants be required to provide the requested information is granted, but, consistent with this Court's decision as to the appropriate scope of the collective, such production need only be made regarding potential opt-in plaintiffs who

---

[4] Although Plaintiffs do not specify the Chinese dialect in which the notice should be prepared, this Court assumes, based on a statement by Wu in his Affidavit referring to a conversation he had in Mandarin Chinese, (*see* Wu Aff ¶ 84), that they are seeking to have the notice prepared in Mandarin. If Plaintiffs believe that additional dialects are necessary to provide meaningful notice to all members of the collective, then they may also send out notice with additional translations.

worked at Defendants' restaurants as delivery workers, sushi chefs, food packers, dishwashers, or wait staff.  *See Ji Li v. Ichiro Restaurant Inc.,* No. 14cv10242 (AJN) (JCF), 2015 WL 6828056, at *5 (S.D.N.Y. Nov. 5, 2015) (where the court found that plaintiffs had only established that a group of delivery workers were similarly situated, defendants would only be ordered to produce the requested information for the delivery workers).  The information may be provided by Defendants in Microsoft Excel, or in any other reasonably useable form.

## CONCLUSION

For all the foregoing reasons, Plaintiffs' motion for conditional certification of the collective and Court-authorized notice (Dkt. 72) is granted in part and denied in part.

Plaintiffs are directed to modify their Proposed Notice of Pendency in accordance with the rulings herein, and to resubmit it to this Court for approval within two weeks of the date of this Order.

Within 30 days of the date of this Order, Defendants shall provide to Plaintiffs' counsel the names, last known mailing addresses, last known telephone numbers, last known email addresses, last known WhatsApp, WeChat and/or Facebook usernames, work location, dates of employment, and position for all delivery workers, sushi chefs, food packers, dishwashers, or wait staff who worked for Defendants at any of their three restaurants from June 20, 2014 to the present.

Once this Court approves the modified notice, Plaintiffs' counsel may arrange to have it disseminated, in any relevant language, via mail, email, text message, and/or social media chat, to all potential members of the collective.  At the same time that the notice is disseminated by Plaintiffs' counsel, Defendants shall post a copy of the notice, in all relevant languages, at each restaurant location, in a conspicuous and unobstructed location or locations likely to be seen by

all currently employed members of the collective, and the notice shall remain so posted

throughout the opt-in period.

In light of the rulings herein, the Clerk of Court is directed to close the motion filed at

Dkt. 72 on the Docket of this action.

Dated: New York, New York
      July 25, 2019

SO ORDERED

_Debra Freeman_

DEBRA FREEMAN
United States Magistrate Judge

Copies to:

All counsel (via ECF)