**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JIAN WU and
FEN BIAO CAI,
*on behalf of themselves and other persons similarly situated,*

Plaintiffs,

-against-

SUSHI NOMADO OF MANHATTAN, INC.
d/b/a Nomado 33,
SUSHI PARA 33 CORPORATION
d/b/a Nomado 33,
SUSHI PARA MANHATTAN, CORP.
d/b/a Sushi Para
d/b/a Sushi Para (14th Street)
d/b/a Sushi Para (Third Avenue)
d/b/a Sushi Para 88,
WEI LOONG CHAN
a/k/a Wei Loon Chan,
WENWU CHEN,
ZHOU LIN,
SHENG R DONG, and
DING FENG ZHANG
a/k/a Andy Zhang,

Defendants.

17cv04661 (MKV) (DF)

consolidated with
18cv1126 (MKV) (DF)

**REPORT AND RECOMMENDATION**

**TO THE HONORABLE MARY KAY VYSKOCIL, U.S.D.J.:**

Currently before the Court is Defendants' motion for sanctions against plaintiff Jian Wu, ("Wu"), under Rules 41(b) and 37(b) of the Federal Rules of Civil Procedure. (Dkt. 134.) Specifically, Defendants seek an order dismissing Wu's claims based on his continued failure to make himself available for a deposition, even after this Court directed that the deposition be conducted by a certain date. For the reasons discussed below, although this Court finds that Wu has failed to demonstrate that he has taken sufficient steps to make himself available to be

deposed, and that Wu's counsel of record, Aaron B. Schweitzer, Esq., and John Troy, Esq., of the law firm of Troy Law, PLLC ("Troy Law"), have engaged in sanctionable conduct in a number of ways related to this issue, this Court finds that the harsh sanction of dismissal is unwarranted. Rather, this Court recommends the imposition of lesser sanctions, as sufficient to address the particular situation that has been presented by the parties.

## BACKGROUND

This case was commenced on June 20, 2017. (*See* Dkt. 1.)[1] According to Wu, he is a national of the People's Republic of China ("China"), and, in the same month as the Complaint was filed (*i.e.*, in June of 2017), he traveled from the United States to China, where he has apparently remained ever since. (*See* unsworn Affidavit[2] of Jian Wu Regarding Why He Should Not Be Sanctioned, dated July 29, 2021 ("Wu Aff.") (Dkt. 139) ¶¶ 1, 5.) It is unclear whether, at the time the Complaint was filed, Wu had already relocated to China, or if he left the United States shortly after the case was commenced. It is also unclear when, in the somewhat troubled course of this litigation,[3] Defendants' counsel may have first discussed scheduling Wu's deposition, but it is undisputed that, at a minimum, Defendants served a deposition notice for Wu on November 18, 2020. (*See* Letter to the Court from Aaron Schweitzer, Esq., dated Mar. 1, 2021 ("3/1/21 Pl. Ltr.") (Dkt. 126), at 1.) Despite this, it appears that Troy Law did not inform

---

[1] All Docket entries referenced herein are from the Docket in Case No. 17cv04661, the action originally commenced by Wu. That action was eventually consolidated with the later, related action brought by plaintiff Fen Biao Cai ("Cai").

[2] Although titled an "Affidavit," Wu's submission, which is stated to have been made under penalty of perjury under the laws of the United States, is more appropriately characterized as a declaration, made pursuant to 28 U.S.C. § 1746(1).

[3] This Court notes that this action was delayed, over time, for several reasons, including for motion practice relating to the withdrawal of Defendants' original counsel and potential default judgments against Defendants.

Defendants of the fact of Wu's relocation to China until *March of 2021* (*see* First letter to the Court from Michael Brand, Esq., dated Mar. 21, 2021 ("3/21/21 Ltr. I") (Dkt. 128), at 1) – approximately four months after admittedly receiving the deposition notice and nearly *four years* after the lawsuit had commenced.

In January 2021 (after having been placed on notice that Wu's deposition was being sought), Troy Law requested that the deadline for the completion of all discovery be extended to March 31, 2021, representing to this Court that the "ongoing Pandemic" had made it "extremely difficult to communicate with [its] clients." (Letter to the Court from Aaron Schweitzer, Esq., dated Jan. 29, 2021 (Dkt. 124), at 1.) Counsel said nothing in that letter regarding Wu's presence in China, or as to how the pandemic had hindered counsel's communications with him. This Court granted the requested extension, but, in light of prior delays in the action, it cautioned the parties that no further extensions would be granted "absent a particularized showing of extraordinary cause." (Order, dated Feb. 6, 2021 (Dkt. 125).)

On March 1, 2021, Troy Law represented to the Court that the parties were "conferring about when to schedule the depositions in this matter prior to the discovery end date of March 31, 2021." (3/1/21 Pl. Ltr., at 1.) Indeed, it appears that Troy Law offered, to Defendants' counsel, certain dates in March 2021 on which, according to Troy Law, Wu could be available for deposition. (*See* Second letter to the Court from Michael Brand, Esq., dated Mar. 21, 2021 ("3/21/21 Def. Ltr. II") (Dkt. 129), at 1.) Then, on March 16, 2021, Troy Law wrote to the Court, indicating that Wu was "currently in China"; stating that it had proposed that Wu's deposition be taken by videoconference on March 25, 2021 (presumably from China); and requesting that the Court "allow Plaintiff" to conduct the deposition "in trial style," for use at trial in lieu of live testimony, as Wu "would not be able to return to the United States, due to the

ongoing pandemic and his immigration status." (Letter to the Court from Aaron Schweitzer, Esq., dated Mar. 16, 2021 ("3/16/21 Pl. Ltr.") (Dkt. 127), at 1.) In that letter, Troy Law focused solely on the manner in which Wu's deposition was to be conducted and on whether the deposition testimony could substitute for trial testimony, saying *nothing* about any possible difficulty in securing that testimony by remote means. (*See generally id.*) Defendants opposed the request to convert the anticipated discovery deposition into a "trial" deposition (*see* 3/21/21 Def. Ltr. I), and then separately requested an extension of discovery to April 19, 2021 (*see* 3/21/21 Def. Ltr. II). In requesting that extension, Defendants' counsel noted that, when he informed Troy Law that he had a conflict on the March deposition dates that had previously been proposed, Troy Law alternatively offered April 9 and 19 as dates when Wu and his co-plaintiff, Cai, could be available for their depositions – presumably proposing, once again, that Wu's deposition be taken remotely, from China. (*See id.*, at 1.)

When this Court received these submissions from the parties, it *sua sponte* raised the question of whether Wu would be permitted, under Chinese law, to give remote testimony from China. (*See* Order, dated Mar. 25, 2021 (Dkt. 130) (citing *Ji v. Jling Inc.*, No. 15-CV-4194 (SIL), 2009 WL 1441130 (E.D.N.Y. Mar. 31, 2019), *appeal dismissed*, 799 F. App'x 88 (2d Cir. 2020), and directing Troy Law to inform this Court as to whether Wu was a Chinese citizen, and, if so, "to explain the ramifications of Wu's citizenship on the application to conduct his deposition remotely, from China, either for discovery purposes, or as a substitute for trial testimony").) In response, Troy Law wrote to this Court on March 30, 2021, stating, *for the first time*, that Wu was a Chinese national, and that, under Chinese law, he would not, in fact, be able to provide testimony from China, but rather would have to travel first to Hong Kong, Macau, Taiwan, or another country, and give his testimony from there. (*See* letter to the Court from

John Troy, Esq., dated Mar. 30, 2021 (Dkt. 131), at 1.) Further, counsel stated that, in order to engage in such travel, Wu would first have to apply for and obtain a special "Exit-Entry Permit," which, as of that date, he had not done. (*See id.*, at 2.) According to Troy Law, Wu anticipated that Hong Kong would permit entry by visitors with such a permit "in late May or early June 2021." (*Id.*) For this reason, Troy Law requested an extension of the discovery to an unspecified date (*see id.*), presumably after early June 2021.

On May 12, 2012, this Court held a conference with counsel, at which it ruled that Defendants should be permitted to proceed with a *discovery* deposition of Wu, and that, if the parties were then unable to settle this action, and if it later appeared that Wu were, in fact, unable to attend trial (either in person or by remote means), then counsel could renew the application to conduct a "trial" deposition. (*See* Order, dated May 12, 2021 (Dkt. 133).) So as to allow Wu a reasonable time to travel to Hong Kong or elsewhere for the discovery deposition, this Court also extended the time for the completion of both Plaintiffs' depositions to June 30, 2021. (*See* separate Order, also dated May 12, 2021 (Dkt. 132).) This Court expressly ordered both depositions to be completed by that date (*id*. ("The discovery depositions of Plaintiffs (which the Court understands are all that remain[] for discovery to be complete) *shall be conducted* by 6/30/2101." (emphasis added))), and instructed counsel "to work together cooperatively to schedule the remote deposition of plaintiff Wu" (*id*.).

Evidently, Wu was not deposed by June 30, 2021, nor did Troy Law contact the Court at any time before that date to explain any difficulties that Wu was experiencing in being able to travel to Hong Kong or elsewhere, so that he could give remote deposition testimony. Rather, on that date, Defendants filed their letter motion for sanctions, stating that Troy Law had not proposed any new dates for Wu's deposition, and, instead – just before the June 30 extended

deadline – had informed Defendants that it would be seeking a stay of discovery, or, alternatively, another three months (to September 30, 2021) to produce Wu for his deposition. (*See* Letter to the Court from Michael Brand, Esq., dated June 29, 2021 ("Def. Mtn.") (Dkt. 134).) Troy Law opposed the sanctions motion by contending that it had acted in good faith to try to schedule Wu's deposition (*see* Letter to the Court from Aaron Schweitzer, Esq., dated June 30, 2021 ("Pl. Opp.") (Dkt. 135), at 1) and outlining a number of steps that would have to be taken before the deposition could take place (*see id.*, at 3 (describing the need for Wu to apply for a travel permit, wait for approval, receive a certificate, book his trip to Hong Kong, and then quarantine)). Troy Law, however, said nothing in its opposition that suggested that Wu had attempted to take such steps at any time after this Court issued its May 12 Order. Consistent with what Troy Law had reportedly told Defendants' counsel, it asked for either a stay of discovery until Wu could obtain a travel permit, or an extension of discovery to September 30. (*Id.*, at 1.)

On July 21, 2021, this Court informed the parties that it would defer ruling on Defendants' sanctions motion, pending receipt of a declaration from Wu, made under penalty of perjury, setting forth, *inter alia*, when he had first informed his counsel that he was in China, when he became aware that his deposition was being sought, the nature of the steps he had taken to be able to give deposition testimony, when he took such steps, and the current status of any application he had made to travel outside of China for the purpose of being able to give deposition testimony. (Order, dated July 21, 2021 (Dkt. 137).) Wu submitted his "Affidavit" on July 30, 2021 (*see supra*, at n.2), stating that he had told his counsel in June 2017 that he was leaving for China, but that he could be reached, as needed, through "WeChat" (Wu Aff. ¶¶ 7, 10); that he was informed by counsel "[o]n or about March 4, 2021" (*i.e.*, approximately

four months after Defendants had served a deposition notice) that he would have to appear for a deposition (*id.* ¶ 13); that (apart from some earlier efforts) he had made in-person attempts in both March and April 2021 to obtain a travel permit (*id.* ¶¶ 17-22); that he had also (at an unspecified time) checked an "Entry-Exit Administration" website, which, he represented, had indicated that travel to Hong Kong or Macau was suspended (*id.* ¶ 23); and that he was unsure when the travel restrictions would be lifted (*id.* ¶ 26).

John Troy also submitted his own Declaration on July 30, 2021. (*See* Declaration of John Troy in Support of Why Plaintiff Jian Wu Should Not Be Sanctioned, dated July 30, 2021 ("Troy Decl.") (Dkt. 138).) In his Declaration, Troy stated that, while Wu had left for China in 2017, he had remained in communication with the firm and had been responsive to counsel's requests for his input on discovery responses. (*Id.* ¶¶ 4, 10-14.) It appears from Troy's Declaration, though, that there was an extended period of time in which the firm may have been doing little to advance this litigation or to keep Wu informed about the progress of the case. Rather, Troy stated that, on several occasions – including in the summer and fall of 2019, and at both the beginning and end of 2020 – *Wu* had to contact Troy Law to ask for status updates. (*See id.* ¶¶ 15-17, 22.) Further, despite Troy's earlier representation to this Court that Defendants had served deposition notices for Plaintiffs in November of 2020 (*see* 3/1/21 Pl. Ltr.), Troy stated in his Declaration that Defendants "made it first aware [sic] to [Troy Law]" in "March of 2021" that "Plaintiffs should be ready for [d]epositions" (Troy Decl. ¶ 25).

Troy attached to his Declaration, as an exhibit, a document in Chinese that he referred to as a "News Flash," which (according to an included certified translation) is dated June 5, 2020 and which states that, after February 8, 2020, "all Entry and Exit Administration permits are suspended till [sic] further notice." (*Id.* ¶ 33 and Ex. 2 (Dkt. 138-2).) Troy also attached a

second document, also in Chinese, that he referred to as a "message from the Website of the Entry and Exit Administration." (Troy Decl. ¶ 34 and Ex. 3 (Dkt. 138-3).) That document contains no heading, date, or other indicia of authenticity, and appears to have been typed onto a blank page. (*See id.*) An included certified translation indicates, however, that the document's contents are taken from "the webpage of Immigration Card Appointment," and that the document states, in relevant part:

> In order to maintain the life safety and health of citizens and effectively prevent the epidemic after leaving the country, the issuance of relevant entry and exit documents, including passports (for non-essential and non-emergency reasons such as travel and visiting relatives), Exit and Entry Permits to Hong Kong and Macao (Hong Kong travel endorsement and Hong Kong business endorsement) and Exit and Entry Permits to Taiwan (travel endorsement), are still suspended.

(*Id.*, Ex. 3.)

Finally, on September 10, 2021, Troy Law sought to supplement its opposition to Defendants' sanctions motion with what it described as "new information not available at the time" it had filed its earlier papers. (Letter to the Court from Aaron Schweitzer, Esq., dated Sept. 10, 2021 ("9/10/21 Pl. Supp. Opp.") Dkt. 140.) Specifically, counsel brought to this Court's attention that the *Ji* decision that had been cited by this Court in its Order of March 25, 2021 (Dkt. 130) had, according to counsel, been "reversed" by the magistrate judge who had issued the original decision (*see* 9/10/21 Pl. Supp. Opp.). In *Ji* – in which Troy Law similarly represented a plaintiff who was a Chinese national living in China – the plaintiff had given a remote deposition from Hong Kong, and had planned to give remote trial testimony from Taiwan. *See Ji*, 2009 WL 1441130, at *2. Initially, the court had granted the plaintiff permission to testify at trial by video link and denied as moot the plaintiff's alternative request to submit his deposition testimony in lieu of live trial testimony. *See id.*, at *3. When it became

apparent during trial, however, that the plaintiff was testifying remotely from *China*, the court halted and then struck his testimony as illegal under Chinese law. *See id.*, at *4. In a follow-up decision, cited by Troy Law in its September 2021 submission, the court decided that, at a new trial, it would allow the plaintiff to introduce his deposition testimony in lieu of live testimony. *See Ji v. JLing Inc.*, No. 15-cv-4194 (SIL), Elec. Order (E.D.N.Y. Aug. 19, 2021). Troy Law argued that, based on this decision, this Court should "permit [] Wu to give his deposition testimony from Hong Kong, Macau, or Taiwan when travel restrictions are lifted, and use that deposition testimony at trial." (9/10/21 Pl. Supp. Opp.)

In Troy Law's supplemental submission, counsel said nothing about the current state of Chinese travel restrictions and gave no indication as to whether Wu had made any further attempts – since last April – to obtain a travel permit. (*See generally id.*)

## **DISCUSSION**

### **I. APPLICABLE LEGAL STANDARDS**

Defendants principally seek dismissal of Wu's claims under Rule 41(b) of the Federal Rules of Civil Procedure, for failure to prosecute, referencing the amount of time that has passed since they requested Wu's deposition, and Troy Law's delays and repeated failures to make Wu available. Defendants, however, also suggest that dismissal would be appropriate as a discovery sanction under Rule 37(b), which allows for sanctions for a party's failure to comply with discovery orders of the Court.[4] Legal standards applicable to both of these Rules are set out briefly below. In addition, although no party has discussed any principles of international comity

[4] Perhaps because Wu's deposition was never firmly scheduled, Defendants do not separately rely on Rule 37(d), which allows for sanctions in the particular circumstance of a party's failure to appear for a deposition after being served with proper notice. *See* Fed. R. Civ. P. 37(d)(1)(A)(i). In any event, the sanctions that may be imposed for such failure are the same as those that may be awarded under Rule 37(b). *See* Fed. R. Civ. P. 37(d)(3).

in connection with the pending motion, this Court finds those principles to be relevant here, and will therefore address them *sua sponte*.

**A. <u>Dismissal For Failure To Prosecute, Under Rule 41(b)</u>**

A plaintiff has a general obligation to prosecute his case diligently, and, if he fails to do so, the Court may dismiss the action under Rule 41(b) of the Federal Rules of Civil Procedure, for failure to prosecute. *See Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982). "A plaintiff's lack of diligence alone is enough for dismissal." *West v. City of New York*, 130 F.R.D. 522, 526 (S.D.N.Y. 1990) (citation omitted). The Court need not even wait for a motion to dismiss, *see Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-30 (1962), and is not required to provide notice of the dismissal, *see West*, 130 F.R.D. at 524. Indeed, because district courts are "necessarily vested" with the control required "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases," this Court may even dismiss an action with prejudice, where a plaintiff fails to prosecute his case. *Link*, 370 U.S. at 630-31.

In deciding whether to dismiss an action for failure to prosecute, the Court should consider: "(1) the duration of plaintiff's failures or non-compliance; (2) whether plaintiff had notice that such conduct would result in dismissal; (3) whether prejudice to the defendant is likely to result; (4) whether the court balanced its interest in managing its docket against plaintiff's interest in receiving an opportunity to be heard; and (5) whether the court adequately considered the efficacy of a sanction less draconian than dismissal." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 63 (2d Cir. 2000) (citing *Nita v. Conn. Dep't of Envtl. Prot.*, 16 F.3d 482, 485 (2d Cir. 1994)).

**B. Sanctions For Failure To Comply With Discovery Orders, Under Rule 37(b)**

Rule 37(b) of the Federal Rules of Civil Procedure provides that "[i]f a party . . . fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A); *see also Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991) ("Provided that there is a clearly articulated order of the court requiring specified discovery, the district court has the authority to impose Rule 37(b) sanctions for noncompliance with that order."). Sanctions under Rule 37 are intended (1) to ensure that a party will not benefit from its failure to comply with a court order, (2) to obtain the party's compliance, and (3) to serve as a deterrent. *See Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988) (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639 (1976)).

The "mildest" sanction specifically enumerated under Rule 37(b) is an order that the party who violated the discovery order at issue, or the attorney advising that party (or both), be required to reimburse the opposing party for expenses, including attorneys' fees, incurred as a result of the violation. *Oleg Cassini, Inc. v. Electrolux Home Prods., Inc.*, No. 11cv1237 (LGS) (JCF), 2013 WL 3056805, at *3-4 (S.D.N.Y. June 19, 2013) (citing *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979)). Where there is a failure to comply, Rule 37(b) generally requires that this sanction be imposed on a party and/or his counsel, "unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C); *see also Novak v. Wolpoff & Abramson LLP*, 536 F.3d 175, 178 (2d Cir. 2008) (noting that the language of Rule 37 "certainly suggests that an award of expenses is mandatory unless one of the two exceptions – substantial justification or other circumstances – applies").

Other sanctions available under Rule 37(b) include directing that certain facts be taken as established, precluding the party from supporting its claims or introducing certain matters in evidence, striking the party's pleadings or portions of its pleadings, staying the action pending compliance, dismissing the party's claims in whole or in part, rendering a default judgment against the party, or holding the party in contempt. Fed. R. Civ. P. 37(b)(2)(A); *see also Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 303 (2d Cir. 2009) (affirming the district court's dismissal of case as a Rule 37(b) sanction where a party defied all of the court's discovery orders over a six-month period, "each of which warned of the possibility of sanctions, including dismissal"); *Transatl. Bulk Shipping Ltd. v. Saudi Chartering S.A.*, 112 F.R.D. 185, 189 (S.D.N.Y. 1986) (holding that Rule 37(b) sanctions were appropriate due to a party's "proven dishonesty and repeated violations of three court orders").

Dismissal of a claim under Rule 37 "is an extreme sanction, to be imposed only in extreme circumstances," *Jones v. Niagara Frontier Transp. Auth.*, 836 F.2d 731, 734 (2d Cir. 1987) (citation omitted), and, before such a severe sanction is imposed, the Court should consider the appropriateness and adequacy of a lesser sanction, *see Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007) (noting that "sanction of dismissal is a drastic remedy that should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions" (internal quotation marks and citations omitted)).

The party seeking sanctions bears the initial burden of demonstrating non-compliance with a court order. *See Oleg Cassini,* 2013 WL 3056805, at *3. Once it is shown that a discovery order was violated, the disobedient party has the burden of showing that an award of the expenses caused by the violation is not warranted. *See Novak*, 536 F.3d at 178.

### C. <u>Principles of International Comity</u>

Courts have "long recognized the difficulties faced by parties for whom compliance with a U.S. discovery order would violate foreign law." *Linde v. Arab Bank, PLC*, 706 F.3d 92, 109 (2d Cir. 2013) (citing *Société Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197 (1958) ("*Rogers*")). As the Supreme Court observed in *Rogers*, "[i]t is hardly debatable that fear of criminal prosecution constitutes a weighty excuse for [noncompliance], and this excuse is not weakened because the laws preventing compliance are those of a foreign sovereign." *Rogers*, at 211; *see also Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court*, 482 U.S. 522 (1987) ("*Aérospatiale*") (making the same observation).

As noted by the Second Circuit, though, both *Rogers* and *Aérospatiale* hold that the operation of foreign law "do[es] not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that [law]." *Linde*, 706 F.3d at 109 (citing *Aérospatiale*, 482 U.S. at 544 n.29; *Rogers*, 357 U.S. at 204-06). Ultimately, "the District Court possesses wide discretion to proceed in whatever manner it deems most effective." *Id.* (citing *Rogers*, 357 U.S. at 213). In exercising that discretion where, as here, a party claims that foreign law prevents discovery from proceeding, the court must engage in a "particularized analysis." *Id.* (citing *Aérospatiale*, 482 U.S. at 543).

Specifically, "[w]hen evaluating the propriety of an order directing the production of [discovery] in contravention of foreign law, courts in the Second Circuit consider" seven factors, the first five of which are drawn from *Aérospatiale*. *Wultz v. Bank of China Ltd.*, 910 F. Supp. 2d 548, 552 (S.D.N.Y. 2012). The relevant factors to consider are: (1) the importance to the investigation or litigation of the documents or other information requested; (2) the degree

of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine the important interests of the state where the information is located; (6) the hardship of compliance on the party . . . from whom discovery is sought; and (7) the good faith of the party resisting discovery. *Royal Park Investments SA/NY v. HSBC Bank USA, NA.*, No. 14cv8175 (LGS), 2018 WL 745994, at *2 (S.D.N.Y. Feb. 6, 2018) (citing *Laydon v. Mizuho Bank, Ltd.*, 183 F. Supp. 3d 409, 419-20 (S.D.N.Y. 2016)).

## II. <u>DEFENDANTS' SANCTIONS MOTION</u>

In opposition to Defendants' motion for sanctions, Wu does not challenge the basic principle that a plaintiff pursuing a claim in this Court must make himself available for a pre-trial deposition when duly requested by the defendant and ordered by the Court. Wu has not been deposed in this case due to a combination of his – and, to a major extent, his counsel's – lack of diligence, and what is now being posited as a foreign-law bar to his providing the discovery sought. The question of how the Court should respond to this situation thus turns on two issues: (1) the extent of Wu and Troy Law's neglect of Wu's discovery obligations and disregard for this Court's orders, and (2) the ramifications of any Chinese law that is said to prohibit Wu from giving deposition testimony within mainland China, and any restrictions currently being imposed by China on Wu's ability to travel elsewhere for the purpose of being deposed. This Court considers each, in turn:

### A. <u>Lack of Diligence and Disregard for Discovery Orders</u>

Defendants' motion to dismiss is primarily based on an argument that Wu and Troy Law have failed to take diligent steps to make Wu available for deposition, which Defendants contend

warrants dismissal of his claims under Rule 41(b). (*See* Def. Mtn., at ECF 3-4.[5]) Defendants' reliance on Rule 37(b) is based on the same alleged failure, in the face of this Court's May 12 Order requiring Wu's deposition to be completed by June 30. (*See id.*; *see also* Dkt. 132.) Given that Wu has still not been deposed, this Court finds that Defendants have met their burden of demonstrating both a lack of diligence by both Wu and his counsel, as well as non-compliance with this Court's May 12 Order.

Looking first to the actions (or inaction) of counsel, this Court finds that Troy Law, as Wu's counsel of record, has, in fact, demonstrated a lack of diligence in pursuing this case. First, as a general matter, Troy Law apparently failed, for extended periods of time, to communicate with its own client, leaving Wu to have to ask the firm, repeatedly, for status updates on the case. (*See* Troy Decl. ¶¶ 15-17, 22.) Of particular relevance here, Troy Law has conceded that it was served with a notice for Wu's deposition in November 2020 (*see* 3/1/21 Pl. Ltr., at 1), but, according to Wu, the firm did not notify him until March 2021 that he would need to give deposition testimony (*see* Wu Aff. ¶ 13). Furthermore, Wu has stated, under penalty of perjury, that he informed his counsel that, while in China, he would be available to be reached via WeChat (*see id.* ¶ 10), casting doubt on Troy Law's representation to this Court, in January 2021, that a discovery extension was needed because the firm was having difficulty communicating with its clients.

Second, there have been marked lapses in Troy Law's communication of significant information to both opposing counsel and the Court. It appears that, for most of this protracted litigation – and well before the COVID-19 pandemic arrived and gave rise to any travel

---

[5] As Defendants' letter motion does not itself have page numbers, this Court will cite to pages of this document by referring to the page numbers affixed to the document by the Court's Electronic Case Filing ("ECF") system.

restrictions – Troy Law failed to give Defendants any notice of the fact that Wu was in China and, therefore, that he might not be able to participate fully in the discovery process. Even upon being served with a notice for Wu's deposition, Troy Law continued, for months, to withhold from Defendants the fact that Wu was in China, and the firm also failed to inform Defendants that Chinese law might prohibit Wu from providing remote testimony from mainland China. Troy Law also failed to raise that issue with this Court when addressing what discovery remained to be completed in this case, despite being well aware of the issue from having litigated the *Ji* case. *See Ji*, 2009 WL 1441130, at *13 (finding it "undisputed that [Ji's] counsel [Troy Law] was aware by as early as December 2016 of the relevant limitations imposed under Chinese law pertaining to Ji's ability to testify from mainland China").

Third, it appears that Troy Law failed to make any kind of adequate investigation into Wu's ability to leave China for the purpose of giving deposition testimony. In early and mid-March of 2021, Troy Law represented to both opposing counsel and the Court, seemingly without any basis, that Wu's deposition could be scheduled before the end of that month, and even proposed specific dates. (*See* 3/1/21 Pl. Ltr., at 1; 3/21/21 Def. Ltr. II, at 1; *see also* 3/16/21 Pl. Ltr, at 1.) Then, when the deposition did not happen in March, Troy Law informed this Court on March 30 that Wu anticipated being permitted to travel to Hong Kong in "late May or early June," leading this Court to extend discovery to June 30. The basis for Wu's belief that he would be able to travel by June has never been made clear, and Troy Law has not indicated that it conducted any independent investigation of the matter.

As for Wu's own conduct, the fact that he left the country during the very same month that he initiated this litigation and seemingly has had no intent to return raises a question as to his level of commitment to this litigation. Even putting that aside, however, as a plaintiff need not

reside in this country to pursue a valid claim here, this Court notes that, after it entered its May 12 Order (Dkt. 132), extending discovery so that Wu could obtain permission to travel for his deposition, and ordering that his deposition be completed by June 30, Wu seemingly made no new efforts to obtain travel authorization. Rather, Wu's Affidavit reflects that his last effort to obtain a Chinese exit permit was in April, *before* this Court issued that Order, requiring him to appear within seven weeks of the Order's date. (*See* Wu Aff. ¶ 22.)

Lastly, it is also worth nothing that, in opposition to Defendants' motion to dismiss for lack of diligence, Troy Law asked this Court for either an indefinite stay of discovery until Wu could travel to Hong Kong, or, in the alternative, an extension of discovery to September 30, 2021. (Pl. Opp., at 1.) Yet, when Troy Law sought to supplement its opposition on September 10, 2021, the firm offered no update on either the state of China's travel restrictions, or on any further efforts that Wu had made to try to secure the necessary permission to travel. (*See generally* 9/10/21 Pl. Supp. Opp.)

In consideration of the factors set out in *Baffa*, relating to when dismissal for failure to prosecute may be appropriate, it is certainly true that the duration of Wu's failure to appear for a deposition has been significant, weighing in favor of dismissal. His deposition was reportedly noticed in November 2020, nearly a year ago, and it has still not been conducted. This Court, however, did not give Wu specific notice that his failure to appear could result in the dismissal of his claims under Rule 41(b) (or under Rule 37(b)), and this factor thus weighs against such a severe result. The remaining factors can only be weighed after the Court determines whether, after taking Chinese law into account, a lesser sanction than dismissal can be fashioned that would prevent Defendants from suffering meaningful prejudice from Wu's failure to be deposed to date, that would appropriately balance the Court's interest in managing its docket against

Wu's interest in being heard, and that would be effective in addressing Wu's non-appearance. *See Baffa*, 222 F.3d at 63.

Similarly, with respect to Rule 37(b), the Court must determine whether, in light of Chinese law, it is feasible to impose a lesser sanction than dismissal that would satisfy the objectives of the Rule – *i.e.*, that would ensure that Wu will not benefit from his failure to appear for his Court-ordered deposition, that could potentially secure his compliance with this Court's Order, and that would serve as a deterrent. *See Update Art*, 843 F.2d at 71.

**B. Purported Impossibility of Compliance, <u>Due to Chinese Law and Travel Restrictions</u>**

As to the barrier to Wu's deposition purportedly imposed by Chinese law and by that country's restrictions on its citizens' ability to leave the mainland, this Court first notes that Troy Law has not introduced any evidence from a foreign-law expert, to guide this Court's understanding. Nor has Troy Law provided any authenticated documentary evidence regarding the current state of any travel restrictions. To the extent Troy Law has provided any evidence at all on that point, the information contained therein now appears to be at least four months out of date (*see* Troy Decl., Exs. 2, 3), and the firm has since provided no update, even though it sought to supplement its opposition in September for other reasons.

Nonetheless, it appears from other caselaw that Chinese law at least prohibits attorneys from taking depositions in China for use in foreign courts, *see Wei Su v. Sotheby's, Inc.*, No. 17cv4577 (VEC), 2019 WL 4053917, at *3 (S.D.N.Y. Aug. 28, 2019), and may also prohibit remote testimony taken from within its borders, *see Ji*, 2009 WL 1441130, at *5. It may also be true that Wu is currently unable to leave mainland China, so as to give deposition testimony from another location, where he would not run afoul of Chinese law. Yet, even assuming that Wu is facing prohibitions under Chinese law, this Court, as noted above, retains the power to order a

party subject to its jurisdiction to proceed with discovery. *See Linde*, 706 F.3d at 109 (citing *Aérospatiale*, 482 U.S. at 544 n.29; *Rogers*, 357 U.S. at 204-06); *see generally Wultz.*, 910 F. Supp. 2d 548 (granting plaintiff's motion to compel discovery notwithstanding that production would violate Chinese law).

While *Aérospatiale*, from which much of the case law in this area is derived, applies more clearly to "written communication, such as document requests and interrogatories" than to depositions, *Eikenberry v. Celsteel Ltd.*, No. 13cv4661 (AT), 2013 WL 5308028, at *4 (S.D.N.Y. Sept. 19, 2013), courts have still relied upon *Aérospatiale* and its progeny to determine whether depositions should proceed in violation of foreign law, *see, e.g., id.*; *see also Ward-THG, Inc. v. Swiss Reinsurance Co.*, No. 96cv8100 (MBM), 1997 WL 83294, at *1 (S.D.N.Y. Feb. 27, 1997) (relying on *Aérospatiale* to lift a "stay of deposition discovery as to [] Swiss nationals"). Accordingly, this Court will consider the same international comity factors that have been weighed by courts in this Circuit when written discovery is at issue.

The first factor, the importance of Wu's deposition to the litigation, weighs heavily in Defendants' favor. Wu is a plaintiff here; he carries the burden of proof on his claims; and the success of his claims will likely turn heavily on an assessment of his credibility. If unable to secure a deposition at which they may probe his factual allegations and gauge his credibility, Defendants would be disadvantaged in their ability to mount a fully effective defense of Wu's claims at trial, or even to determine if any of his claims may be subject to summary judgment.

The second factor, the degree of specificity of the request, has more direct applicability to requests for production of documents. *See, e.g., Laydon v. Mizuho Bank, Ltd.*, 183 F. Supp. 3d 409, 420-21 (S.D.N.Y. 2016). On the other hand, Troy Law has never suggested that Defendants' efforts to obtain Wu's deposition is overreaching, or that Defendants had given any

indication that they sought to depose Wu on any issues other than his wages and hours – in other words, the issues central to his claims. This factor is thus either neutral or weighs in Defendants' favor.

The third factor, whether the information sought originated in the United States, again weighs in Defendants' favor, as Wu's claims arise entirely from his employment in New York, and Defendants' conduct, in allegedly failing to pay Wu properly under federal and state law, occurred here. (*See* First Amended Complaint, Consolidated, dated Jan. 10, 2019 (Dkt. 71).)

As to the fourth factor, the availability of alternative means of securing the information, this Court notes that Wu may be able to provide written answers to Defendants' questions without sitting for a deposition. Indeed, while he has been in China (and without any suggestion that he had to leave the country to do so), Wu was apparently able to respond to interrogatories served earlier in this case, without raising any concern about the legality, under Chinese law, of providing those responses. (*See* Troy Decl. ¶ 14 (stating that Wu "signed the verification page for his responses to Defendants['] Interrogatories").) Still, Wu has not suggested that his providing answers to written questions would serve as an adequate alternative to his live deposition in this case, and this Court recognizes that a pre-trial deposition is a unique tool for not only exploring the witness's knowledge of facts, but also assessing his credibility. For these reasons, this Court finds that this factor also weighs in Defendants' favor.

The fifth factor, namely the extent to which noncompliance would undermine important interests of the United States, or compliance would undermine the important interests of China, is either neutral or favors Defendants. Certainly, Wu's failure to provide pre-trial testimony would undermine important interests of the United States in resolving disputes efficiently and fairly. *See Vedder Price Kaufman & Kammholz v. First Dynasty Mines, Ltd.*, No. 01cv3970

(WHP), 2001 WL 1190996, at *2 (S.D.N.Y. Oct. 9, 2001). While the disregard of Chinese law by China's citizens and others would presumably undermine China's general interests as a sovereign state, Wu has made no showing, in this instance, as to why his submission to a deposition for use in this wage-and-hour case (which does not, for instance, implicate matters of national security) would actually undermine China's important interests.

The sixth factor, the hardship of compliance on Wu, may weigh in his favor, but the fact that he was able to respond to interrogatories while apparently in China gives this Court some pause as to how severe that hardship would actually be. If providing a verified response to interrogatories was itself illegal under Chinese law, then Wu certainly has not shown that he suffered any adverse consequence from providing that discovery. This Court also notes that, in *Ji*, where the plaintiff was similarly situated to Wu in this case, the plaintiff was able (without reported consequences) to live stream his trial testimony from China; in fact, he did so, until the U.S. court *itself* opted to terminate that testimony out of its own concerns about the potential impact of foreign law. *See Ji*, 2009 WL 1441130, at *4. As for travel hardship, this Court notes that Wu has not argued that it would be physically or otherwise personally difficult for him to travel to Hong Kong, Taiwan, or elsewhere for his deposition, and, although Troy Law contends that travel restrictions are currently in place that prevent him from making that trip, counsel has not provided this Court with any reliable, up-to-date information regarding the current status of any travel restrictions. Under these circumstances, while this Court finds it likely that Wu would face some degree of hardship in submitting to a deposition at this time, this Court has little basis to find that hardship to be so substantial that it should be outcome determinative.

Finally, the seventh factor, the good faith of the party resisting discovery, weighs in Defendants' favor. This Court is troubled by Troy Law's failure even to inform Wu of

Defendants' deposition notice for months. It is even more troubled by the firm's failure to apprise Defendants, for a prolonged period of time, of Wu's whereabouts and of his ability to be deposed. Lastly, this Court finds no colorable excuse for Troy Law's apparent misrepresentations to both Defendants and this Court regarding its supposed inability to be in touch with Wu (when Wu claimed to have been reachable at all times) and regarding dates when Wu could supposedly be made available for deposition.

On balance, the analysis of the international comity factors weighs in Defendants' favor and supports the Court's fashioning of an order that would direct Wu to make himself available for a remote deposition – from China or elsewhere – within a limited period of time, or face preclusive sanctions for failing to do so.

### C. Sanctions Less Severe Than Dismissal Would Be Appropriate Here, Should Wu Continue To Fail To Appear For a Deposition.

The Court has three options: (1) granting Defendants' motion for dismissal of Wu's claims for failure to make himself available, to date, for a pre-trial deposition; (2) imposing no sanction, and instead, as Troy Law requests, staying Wu's claims indefinitely, until such time as he can confirm his ability to travel out of China for the purpose of being deposed; or (3) fashioning alternate sanctions to dismissal that would allow this case to proceed to trial without additional, inordinate delay. The first of these options would seem unduly harsh, especially as this Court has no evidence that Wu himself has acted in bad faith. The second option would be unduly prejudicial to Defendants, as they would have no certainty as to when the claims in this case could ever be resolved. Especially in light of the international-comity analysis above, this Court recommends the third option, as the best choice to effectuate the purposes of Rules 41(b) and 37(b).

In short, this Court finds that there are sanctions available to the Court that would allow the case to proceed, but that would ameliorate any prejudice to Defendants from Wu's non-compliance to date with his discovery obligations; that balance the Court's interests in managing its docket and still enabling the parties to have this matter resolved fairly; and that would ensure that Wu will not benefit from any continued recalcitrance in failing to comply with the Court's orders. Specifically, this Court recommends:

(1) that Wu be granted a final 45 days to make himself available for a remote deposition, either from within China, where he currently resides, or from another location such as Hong Kong, should he be able to obtain a permit to travel there;

(2) that if, within those 45 days, Wu chooses to testify remotely from China, then, based on a balancing of principles of international comity, the Court permit that deposition to be used in this action for whatever purposes it deems appropriate and not strike the testimony on the ground that it was given in violation of Chinese law;

(3) that if Wu fails to make himself available for a remote deposition within 45 days, then discovery be considered closed; that Defendants be permitted, if they wish, to move for summary judgment dismissing Wu's claims; and that Wu be precluded from submitting any affidavit or declaration in substantive opposition to such motion;

(4) that, if Wu's claims, in whole or in part, survive summary judgment, or if Defendants opt to proceed directly to trial, then Wu be precluded from testifying at trial (either in person or remotely), unless he makes himself available for a pre-trial deposition at least 30 days in advance of any trial date that may be set by the Court; and

(5) that, under Rule 37(b)(2)(C), Troy Law be required to pay the reasonable attorneys' fees and expenses incurred by Defendants in moving for sanctions, as the firm has engaged in conduct more egregious than Wu himself, and has not met its burden of demonstrated that an award of expenses would be unwarranted.

This Court makes no recommendation, at this time, as to whether, if Wu is deposed, the Court should permit his deposition to be used at trial in lieu of trial testimony, as that question is premature. Similarly, this Court adheres to its earlier ruling that, while Defendants are entitled to a *discovery* deposition at this time, the question of whether Troy Law should separately be permitted to conduct a *de bene esse* deposition of Wu, as a planned substitute for trial testimony, should be addressed after discovery has closed, and when (and if) it becomes clear that Wu would not be able to give live trial testimony, either in person or remotely. (*See* Dkt. 133.)

## CONCLUSION

For all of the foregoing reasons, I respectfully recommend that Defendants' motion for sanctions (Dkt. 134) be granted, but only to the extent of the sanctions proposed above, rather than the dismissal of Wu's claims.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail). Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Mary Kay Vyskocil, at the United States Courthouse, 500 Pearl Street, Room 2230, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Vyskocil. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993);

*Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
October 29, 2021

Respectfully submitted,

DEBRA FREEMAN
United States Magistrate Judge

Copies to:

All counsel (via ECF)